Justice SOTOMAYOR, concurring.
In my view, this case turns on Vonlee Titlow's failure to present enough evidence of what Frederick Toca did or did not do in the handful of days after she hired him and before she withdrew her plea. As our opinion notes, she bore the burden of overcoming two presumptions: that Toca performed effectively and that the state court ruled correctly. She failed to carry this burden. We need not say more, and indeed we do not say more. I therefore join the Court's opinion in full. I write separately, however, to express my understanding of our opinion's limited scope, particularly with respect to two statements that it makes about the adequacy of Toca's performance.
*19 *25 First, we state that "[a]lthough a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under Strickland, it may affect the advice counsel gives." Ante, at 17. The first part of that statement bears emphasis: Regardless of whether a defendant asserts her innocence (or admits her guilt), her counsel must "make an independent examination of the facts, circumstances, pleadings and laws involved and then ... offer his informed opinion as to what plea should be entered." Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (plurality opinion). A defendant possesses " 'the ultimate authority' " to determine her plea. Florida v. Nixon, 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). But a lawyer must abide by his client's decision in this respect only after having provided the client with competent and fully informed advice, including an analysis of the risks that the client would face in proceeding to trial. Given our recognition that "a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities," ante, at 17, our further observation that such a proclamation "may affect the advice counsel gives," ibid., states only the obvious: that a lawyer's advice will always reflect the objectives of the representation, as determined by the adequately informed client.
Second, we state that it was reasonable for the Michigan Court of Appeals to reject respondent's claim, "given that respondent was claiming innocence and only days away from offering self-incriminating testimony" at her aunt's trial. Ante, at 17. This is true in context: Because respondent failed to carry her burden of showing that Toca's performance was not adequate, the state court reasonably held that it was. But our statement about the facts of this case does not imply that an attorney performs effectively in advising his client to withdraw from a plea whenever the client asserts her innocence and has only a few days to make the decision. Had respondent made a better factual record-had she actually shown, for example, that Toca failed to educate *26 himself about the case before recommending that she withdraw her plea-then she could well have prevailed.
Because (and only because) respondent failed to present enough evidence to overcome the twin presumptions of AEDPA and Strickland, I join fully in the opinion of the Court.
Justice GINSBURG, concurring in the judgment.
While I join the Court's judgment, I find dubious the Michigan Court of Appeals' conclusion that Toca acted reasonably in light of Titlow's protestations of innocence. Toca became Titlow's counsel on the recommendation of the deputy sheriff to whom Titlow professed innocence. App. 298. As the Court rightly observes, Toca's conduct was "far from exemplary." Ante, at 18. With virtually no time to make an assessment of Titlow's chances of prevailing at trial, and without consulting the lawyer who had negotiated Titlow's plea, Toca told Titlow he could take the case to trial and win. App. 295 (Titlow's uncontradicted averment). With Toca's aid, Titlow's plea was withdrawn just three days after Toca's retention as defense counsel. At sentencing, the prosecutor volunteered that Titlow had been the "victim of some bad advice." Id., at 291.
Nevertheless, one thing is crystal clear. The prosecutor's agreement to the plea bargain hinged entirely on Titlow's willingness to testify at her aunt's trial. See App. 42-43, 45. Once Titlow reneged on that half of the deal, the bargain failed. Absent an extant bargain, there was nothing *20 to renew. See Puckett v. United States, 556 U.S. 129, 137, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) ("Although the analogy may not hold in all respects, plea bargains are essentially contracts.... [W]hen one of the exchanged promises is not kept ... we say that the contract was broken."); Scott & Stuntz, Plea Bargaining as Contract, 101 Yale L.J. 1909, 1953 (1992) ("When defendants promise to plead guilty in return for government concessions and then do so, they are legally entitled to the concessions. At *27 the same time, if the defendant fails to perform, the prosecutor need not perform either." (footnote omitted)). In short, the prosecutor could not be ordered to "renew" a plea proposal never offered in the first place. With the plea offer no longer alive, Titlow was convicted after a trial free from reversible error. See App. 295. For these reasons, I join the Court's judgment.