NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0554n.06

No. 14-1959

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Aug 06, 2015 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MATTHEW BENDER, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     GUY, GIBBONS, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  This case is about evidentiary rulings at trial.  Matthew Bender, who ran a tax preparation business that filed thousands of fraudulent returns, was on trial for tax fraud.  Bender filed fraudulent returns not only for clients, but also for himself: Bender never reported his tax preparation income.  Three issues that arose at trial are presented on appeal.  First, an IRS agent proffered a summary exhibit that calculated Bender's unreported income.  The district court admitted the exhibit over Bender's objection that the exhibit was inaccurate.  Second, one witness—a client whose testimony established that Bender had falsified her tax return—had a 20-year-old conviction for shoplifting that Bender wanted to use as impeachment evidence.  The district court excluded evidence of the old conviction.  Third, after Bender failed to make a required court appearance, Bender claimed that his preoccupation with his health prevented him from appearing in court, excusing his failure to appear.  Over Bender's objection, the Government was permitted to introduce evidence that Bender had tested positive for

marijuana and cocaine while on bail, as evidence impeaching Bender's claimed concern about his health. Any error in admitting the summary exhibit was harmless, and each of the other two evidentiary rulings of the district court was not an abuse of discretion.

Bender ran a tax preparation business out of his Detroit home. His business was actually a massive tax fraud scheme. Between 2006 and 2011, he prepared and filed 3,621 federal tax returns. Bender falsified nearly all of the tax returns he prepared, using false and inflated entries to claim outsized refunds for his clients. An IRS audit revealed that more than 99 percent of the returns Bender prepared from 2006 to 2008 claimed refunds. Bender's scheme was done without his clients' input or knowledge. Despite his robust tax preparation business, he never reported any income from it on his own tax returns.

Multiple indictments were returned against Bender and several counts in the final indictment were voluntarily dismissed by the Government, but Bender was ultimately tried for three crimes. Based on nine separate false tax returns that he filed for clients, Bender was charged with nine counts of willfully aiding in the preparation of a false tax return, 26 U.S.C § 7206(2). Bender was also charged with one count of corruptly endeavoring to impede the administration of the internal revenue laws, 26 U.S.C. § 7212(a), under three theories: preparing the fraudulent returns, directing his clients to file the false returns, and not filing his own returns. While out on bail for the tax fraud charges, Bender failed to appear in court. As a result, he was charged with one count of knowingly failing to appear, 18 U.S.C. § 3146(a). This charge was severed from the tax fraud charges, and a separate trial was held. Bender was convicted on all counts at both trials. He was sentenced to 48 months' imprisonment and 12 months of supervised release.

Bender appeals, arguing first that the summary exhibit should have been excluded for failure to satisfy Rule 1006. The first error, if any, was harmless. Bender does not explain how he was prejudiced by the admission of the summary exhibit or otherwise respond to the Government's harmless error arguments.

At the tax fraud trial, the clients for whom Bender prepared the nine false returns testified. For example, Marvin Clark and Kenneth David testified that they did not use their automobiles for work, but Bender still claimed deductions for job-related use of an automobile on their returns. Deborah Hawkins testified that her husband did not own a lawn-care and snow-removal business, but Bender had claimed a $12,721 loss for this fictional business on the Hawkins' return. Andrea Quickly testified that she had earned $2,828 in 2010, but the return prepared by Bender for her reported $21,832 in wages and claimed a $5,295 refund. Other clients testified to similar effect.

Bender's reputation for securing large refunds produced significant business, but he never reported any income from his tax preparation work between 2006 and 2011. Bender did not file returns for 2006, 2010, or 2011. His 2007, 2008, and 2009 returns did not mention his tax preparation business or report his income from it.

During the testimony of IRS Agent Andrew Dettling, the court admitted government exhibit 43, a one-page summary chart entitled "Bender Tax Preparation 2006-2011," which presented a computation of Bender's gross income from his tax preparation business:

| Year | Number of Returns | Fee Per Return | Gross Receipts | Gross Receipts Reported | Exhibits |
|------|------|------|------|------|------|
| 2006 | 469 | $150 | $70,350 | Did Not File | 7, 32 |
| 2007 | 581 | $150 | $87,150 | $0 | 8, 16 |
| 2008 | 686 | $150 | $102,900 | $0 | 9, 17 |
| 2009 | 560 | $150 | $84,000 | $0 | 18, 36 |
| 2010 | 625 | $150 | $93,750 | Did Not File | 32, 37 |
| 2011 | 678 | $150 | $101,700 | Did Not File | 32, 38 |
| Total | 3,599 | $150 | $539,850 | $0 | |

Bender objected to the exhibit on one ground: that the summary exhibit was speculative and not accurate because Agent Dettling had not verified that every client had been charged a $150 fee. The Government replied that Bender had admitted during an audit that he charged $150 per return, that the returns in the record reflected a $150 fee, and that electronic records reflected an even higher fee in 2011. The district court overruled the objection, explaining that the court would "receive [exhibit 43] into evidence as representing a summary which implicitly carries with it the suggestion that the information contained therein is speculative and is not necessarily exact."

Error, if any, in admitting the summary exhibit was harmless. None of the charges against Bender required proof of the exact amount of fees he received. Indeed, the jury instructions permitted conviction on all counts even if Bender prepared the false returns for free. The proof that Bender knowingly prepared and filed false tax returns was enough to convict him of willfully aiding in the preparation of a false tax return, 26 U.S.C § 7206(2), and corruptly endeavoring to impede the administration of the internal revenue laws, 26 U.S.C. § 7212(a), although one way of "corruptly" impeding the due administration of the internal revenue laws is failing to report income. Even if failure to report income was the only basis for the jury's §

7212(a) verdict, there was substantial evidence that Bender charged roughly $150 for preparing a return, e.g., Bender had stated during an audit that he charged $150, several clients testified that they were charged $150, and electronic records revealed that Bender had been charging $200 per return in 2011. There was no dispute that Bender never reported any income. Therefore, any error was harmless.

For the first time on appeal, Bender also argues that the documents underlying the summary exhibit were insufficiently voluminous and were inadmissible hearsay. When such issues are not raised below, they are reviewed for plain error, *see Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Deitz*, 577 F.3d 672, 688, 690–91 (6th Cir. 2009). Because the plain error standard incorporates a harmless error analysis, these claims fail for the reasons just discussed.

Second, the district court did not err in precluding impeachment of witness Debra Hawkins by evidence of her earlier criminal convictions. During Hawkins's testimony, Bender sought to impeach Hawkins's character for truthfulness by evidence of criminal convictions. Hawkins had, on three separate occasions in 1990, 1991, and 1992, been convicted of second degree retail fraud. Bender attempted to introduce evidence of the convictions via Rule 609(b), which provides that convictions over ten years old are admissible only if they are substantially more probative than prejudicial. Bender did not invoke Rule 609(a)(2), which provides that crimes involving a dishonest act or false statement must be admitted. After reciting the Rule 609(b) factors from *United States v. Sims*, 588 F.2d 1145, 1149 (6th Cir. 1978), the district court excluded evidence of the convictions, finding that the convictions were dissimilar to the charges against Bender, were over 20 years old, and had minimal impeachment value.

These evidentiary determinations were within the district court's discretion. When more than ten years have passed since a witness's conviction or release from confinement, evidence of that conviction is admissible only if its probative value substantially outweighs its prejudicial effect. Fed. R. Evid. 609(b). In *Sims*, this court elaborated on the Rule 609(b) standard with a multi-factor test that directs district courts to consider the impeachment value of the crime, the age of the conviction and subsequent history, the similarity between the past crime and the charged crime, the importance of the witness's testimony, and the centrality of the witness's credibility. *Sims*, 588 F.2d at 1149. As stated by the district court, Hawkins' three convictions for misdemeanor second degree retail fraud were over 20 years old, bore little resemblance to the charged tax fraud, and had minimal impeachment value. Even granting Bender his argument that the unfairly prejudicial effect of the convictions would have been minimal, exclusion of the impeachment evidence was not an abuse of discretion because the conviction had so little probative value.

Hawkins' criminal convictions were also not admissible under Rule 609(a)(2). For the first time on appeal, Bender argues that Hawkins' second degree retail fraud convictions were crimes of dishonesty that must be admitted—without balancing prejudicial effect and probative value—under Rule 609(a)(2). Because this objection was not made below, the district court's ruling is reviewed for plain error, *see Deitz*, 577 F.3d at 688, 690–91. Rule 609(a)(2) applies "if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Hawkins' second degree retail fraud convictions did not require a dishonest act or false statement. The Michigan statute for second degree retail fraud does not require a dishonest act or false statement for conviction, *see* Mich. Comp. Laws § 750.356d(1) (1992), because one way to commit retail fraud is shoplifting,

and shoplifting is a crime of stealth, not of dishonesty. *See United States v. Washington*, 702 F.3d 886, 892–94 (6th Cir. 2012). While second degree retail fraud could involve a dishonest act or false statement, e.g., the fraudulent return of a stolen item for a refund, a dishonest act or false statement is not required and Bender never introduced evidence that Hawkins's convictions involved anything other than shoplifting.

Bender's third and final argument on appeal—that the district court erred in admitting impeachment evidence of past drug use over his Rule 403 objection—is so cursory that the court could deem it forfeited. The entirety of Bender's argument was encapsulated in a single sentence: "The presentation of drug usage evidence by the Government was far more prejudicial than probative." In any event, the district court did not err.

At the failure-to-appear trial, the central issue was Bender's affirmative defense that concerns about his health had prevented him from appearing in court. Bender had been released on bond after his arraignment on the tax fraud charges. Bender admitted that he had failed to attend several scheduled meetings with Pretrial Services and that he had failed to attend a bond review hearing, even though he was aware that the court had ordered him to appear. He argued that "uncontrollable circumstances," 18 U.S.C. § 3149(c), excused his failure to appear, namely his concerns about his health and his seeking of medical treatment. In response to Bender's testimony about his health concerns, the Government informed the court that it intended to cross-examine Bender about his having failed several drug tests while awaiting trial, testing positive for marijuana and cocaine. Bender objected that the failed drug tests were more unfairly prejudicial than probative, but the district court overruled the objection because Bender had put his concerns about his health at issue. After Bender testified that he was unaware of any failed

drug tests and that he had not used drugs while awaiting trial, the Government called Bender's Pretrial Services officer to testify about the failed drug tests.

Under Rule 403, evidence may be excluded when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Appeals courts "afford broad discretion to a district court's evidentiary ruling" and "[t]his is particularly true with respect to Rule 403." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). There is no reason to disturb the district court's ruling. While on bail, Bender failed to appear in court as ordered and was charged with violating 18 U.S.C. § 3146(a)(1), which prohibits knowingly failing to appear. Bender asserted an affirmative defense that uncontrollable circumstances prevented him from appearing, 18 U.S.C. § 3146(c), namely his concerns about his health. The Government introduced evidence that Bender had tested positive for marijuana and cocaine use while on bail to show that Bender was not truly concerned about his health. While the evidence of drug use risked unfair prejudice, it also had substantial probative value for undermining Bender's claim that his preoccupation with his health prevented him from appearing in court. Accordingly, the district court did not abuse its discretion in admitting the evidence.

The judgment of the district court is affirmed.