**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-50349 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-01148-GHK-1 |
| v. | MEMORANDUM* |
| GREGORY KRUG, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted November 10, 2016
Pasadena, California

Before: BERZON and NGUYEN, Circuit Judges, and ZOUHARY,** District Judge.

Gregory Krug appeals his conviction under 18 U.S.C. § 115(a)(1)(B) for

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

threatening to assault or murder a federal law enforcement official. We affirm.[1]

1.      The government did not violate Krug's Sixth Amendment right to a speedy trial. The district court applied the four-factor test established in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), analyzing (1) the length of the delay, (2) the reason for the delay, (3) Krug's assertion (or lack thereof) of his speedy trial right, and (4) the actual prejudice suffered as a result of the delay. The court held that while the 34-month delay weighed in Krug's favor, with 20 of those months attributable to government negligence, again weighing in Krug's favor, Krug failed to assert his speedy trial right in a timely fashion and suffered no discernable prejudice.

The district court's analysis is persuasive. The length of the delay was considerable, but in the "middle range of cases in which defendants have sought dismissal for post-indictment delay" where the delay was caused in part by

---

[1] Krug asks us to consider his *pro se* brief, filed before the appointment of counsel, in which he raised ten issues for our consideration, only one of which was raised by his appointed counsel. We grant Krug's motion for the court to consider his *pro se* brief. Only two of the issues raised in Krug's pro se brief merit discussion. The first is the Sixth Amendment issue discussed below. The second concerns Krug's assertion that he should have been appointed replacement counsel because his appointed trial counsel refused to call witnesses on his behalf. Disagreement over litigation strategy does not require the appointment of replacement counsel. *See United States v. Reyes-Bosque*, 596 F.3d 1017, 1034 (9th Cir. 2010). Krug's dispute with his appointed counsel appears to have been a simple and relatively straightforward disagreement over trial strategy. The district court did not abuse its discretion in denying the appointment of replacement counsel.

government negligence. *Compare United States v. Gregory*, 322 F.3d 1157, 1165 (9th Cir. 2003) (delay of 22 months did not justify dismissal), and *United States v. Beamon*, 992 F.2d 1009, 1012-14 (9th Cir. 1993) (delays of 17 and 20 months did not entitle defendants to relief), *with Doggett v. United States*, 505 U.S. 647, 657-58 (1992) (delay of over eight years, six attributable to government negligence, relieved defendant of burden to show particularized prejudice and entitled defendant to relief), *and United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992) (five years' delay attributable to government negligence created a "strong presumption of prejudice" entitling defendant to relief).

The government acknowledges that 20 months of the delay were attributable to its own negligence. Krug proposes that the government's failure to bring him to trial was *reckless* rather than simply negligent, but Krug cites no case law supporting the distinction in the speedy trial context. Even assuming that the distinction has some salience, Krug has pointed to no evidence in the record suggesting any greater government culpability than negligence. "[C]onsiderable deference" is due to a trial court's determination of government negligence. *Doggett*, 505 U.S. at 652.

We place minimal weight on the third *Barker* factor given the circumstances. Although the government correctly argues, and the district court observed, that

3

Krug did not expressly assert his speedy trial right before his arraignment, he filed several motions evincing his desire to litigate his case, including discovery requests. Given that Krug was not appointed counsel until his arraignment, his failure to *specifically* assert his speedy trial right is of little significance.

The fourth *Barker* factor – actual prejudice to the defendant – strongly favors the government. Krug has failed to demonstrate any particularized prejudice as a result of the delay. Krug did not testify at trial and does not maintain that he would have testified but for the effect of the delay upon his memory. Both Krug's recollection and those of the government's witnesses were memorialized shortly after Krug made the alleged statement. Nor was the 34-month delay in Krug's case sufficient to relieve Krug from showing actual prejudice. *Compare Gregory*, 322 F.3d at 1162-63 (holding that 22-month delay was not sufficiently long to excuse the defendant from demonstrating actual prejudice), *with Shell*, 974 F.2d at 1036 (six-year delay, of which five years were attributable to government negligence, created a strong presumption of prejudice which the government could not overcome). In light of the weight of the other factors and because Krug has not demonstrated that he suffered any actual prejudice as a result of the delay, we conclude that the government did not violate his Sixth Amendment right to a speedy trial.

4

2.      Krug challenges the government's references to Devore's "training" and "experience" during its direct examination of Devore and to his "expert[ise]" during its closing argument. Krug acknowledges that he did not object at trial to any aspect of Devore's testimony, and that review is therefore for plain error. *See* Fed. R. Crim. P. 52(b).

The government's examination of Devore and its description of him in its closing argument were improper. The government should not have referred to Devore's "training and experience" as a correctional officer, nor to his "expert[ise]" with respect to inmate violations. Devore was not qualified as an expert. And whether a reasonable person would construe Krug's alleged statement as a "threat" is appropriate for the "average layperson" to determine "[w]ithout additional assistance." *United States v. Hanna*, 293 F.3d 1080, 1085-87 (9th Cir. 2002).

Nevertheless, we are convinced that in the context of this case, the government's use of this tactic did not "affect[] the appellant's substantial rights" or "seriously affect[] the fairness . . . of judicial proceedings," *Puckett v. United States*, 556 U.S. 129, 135 (2009). Devore's testimony was largely cumulative of Doucet's, and was a fairly small component of the government's case. It would have been apparent to the jury that Devore knew almost nothing about the alleged

5

threat beyond what Doucet had told him.  And the jury was properly instructed as to the elements of a "true threat," which made it clear that it was up to them to determine how a reasonable person would have viewed the statement.  The district court did not plainly err in allowing Devore's testimony.

3.     The district court properly allowed Doucet's testimony.  As Krug did not object to any aspect of Doucet's testimony at trial, review is for plain error.

Doucet's testimony that he considered Krug's statement a "threat" was not improper.  The effect of a purportedly threatening statement on the listener or recipient, and the listener's reaction, is "highly relevant."  *United States v. Davis*, 876 F.2d 71, 73 (9th Cir. 1989).  To the extent that the government's examination of Doucet encompassed out-of-court statements, these statements were not introduced to prove the truth of the matter asserted, but to demonstrate the reactions of Doucet and Devore to Krug's alleged threat and to provide context for those reactions.  The statements were therefore not hearsay.  Finally, the government's alleged leading questions were predominantly foundational, or reviewed or summarized testimony Doucet had already given.

4.     The government did not commit significant misconduct during its closing argument. Krug maintains that the government argued facts not in evidence, improperly vouched for Doucet's credibility, and shifted the burden of proof to the

6

defendant.

Although the government did discuss Krug's in-court behavior (in his capacity as an attorney) during its rebuttal, Krug opened the door for the government to do so in his summation, by expressly inviting the jury to consider his demeanor and performance during the trial.

The government also observed during its rebuttal that Doucet could be prosecuted for perjury if he lied under oath. Krug correctly observes that we have interpreted similar statements as vouching for a witness. *See United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005); *United States v. Daas*, 198 F.3d 1167, 1178 (9th Cir. 1999). But we held in *Daas* that a prosecutor's reference to the possibility that witnesses could be charged with perjury constituted "at worst mild vouching," and was not, by itself, grounds for reversal. 198 F.3d at 1179. Because *Daas* suggests that the government's conduct in this case could reasonably be interpreted as "at worst mild vouching," we cannot conclude that the district court plainly erred in allowing it.

Finally, the government did not shift the burden of proof to Krug. "In a case that essentially reduces to which of two conflicting stories is true, it may be reasonable to infer, and hence to argue, that one of the two sides is lying." *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991). The government essentially

7

argued that Krug's theory of the case was implausible. Doing so was not significant misconduct.[2]

**AFFIRMED.**

---

[2] Because we hold that the district court did not make multiple errors, we hold that there was no cumulative error requiring reversal.