# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 5, 2023

Lyle W. Cayce
Clerk

_____

No. 23-50070

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Willie D. Fields,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:11-CR-973-1

_____

Before Higginbotham, Higginson, and Duncan, *Circuit Judges*.
Per Curiam:[*]

Appellant Willie Fields argues the district court improperly revoked his supervised release without first holding a hearing and issuing written findings. We see no error, plain or otherwise, because Fields signed the revocation order himself, thereby waiving any right to a hearing. *See* Fed. R. Crim. P. 32.1(b) (allowing defendant to waive hearing). AFFIRMED.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

## I.

Fields pled guilty of various drug and firearm offenses in March 2013. He was sentenced to 130 months imprisonment—later reduced to 123 months—followed by five years of supervised release. After serving his prison term, Fields began supervised release in October 2021. This proved short-lived.

In August 2022, Fields's probation officer petitioned to revoke his supervised release based on nine violations of his release conditions. The petition was later amended to add a tenth violation. The first violation ("Violation Number 1") was for committing elderly-bodily injury and aggravated assault with a deadly weapon. According to a San Antonio Police Department report, Fields punched a woman he was dating, then pushed the woman's aunt, pointed a gun at her, and stated, "Bitch, I'll kill you." The other violations included associating with documented gang members, possessing and using cocaine, and repeatedly driving without a license despite his probation officer's directives not to do so. Fields was arrested and appointed counsel. After a two-day hearing before the magistrate judge, he was denied bond and placed in custody pending his final revocation hearing.

At a January 2023 status conference, the district court asked the government if it intended to seek revocation based on all the alleged violations or just a subset. The court explained that Fields needed to know what violations he was being charged with "so he c[ould] make an informed decision as to whether he want[ed] to reach an agreed order or contest it." The government responded that any revocation hearing would "center around" Violation Number 1, the only one the parties disputed. The government also noted that the parties had discussed "possible dispositions that would not include Mr. Fields admitting to [that] . . . violation," and that they "might be able to reach an agreement." The court gave the parties

No. 23-50070

fifteen minutes to discuss a deal, at the end of which the parties reported progress but no resolution. The court set the full revocation hearing for March 2023, while urging the parties to "continue [their] talks."

The parties did so and reached an agreement the next day. They submitted, and the court entered, an "agreed order revoking supervised release." The order was signed by Fields, his attorney, the AUSA, and the district judge. It explained that, "[u]pon agreement of the parties, the Court finds that the Defendant committed the violations alleged in the revocation petition filed in this case, EXCEPT THAT THE COURT DOES NOT FIND THAT VIOLATION NUMBER ONE WAS COMMITTED." Finding it "in the interests of justice to revoke the Defendant's supervised release," the order imposed a prison term of 12 months and one day, to be followed by five years supervised release.

Two weeks later, however, Fields changed his mind. He filed a *pro se* notice of appeal, complaining that he had "explained to [his] attorney numerous times that [he] was not interested in a plea" and that "he believe[d] that he could have done better with a revocation hearing" because the court would have ensured Fields "wasn't cheated." Fields also moved to dismiss his appointed counsel, and to "remove" the AUSA for "prosecutorial misconduct and vindictive prosecution." These filings did not explain why Fields personally signed the order revoking his supervised release, however.

New counsel was appointed for Fields's appeal.[1] Fields's sole contention on appeal is that the district court violated his due process rights under *Morrissey v. Brewer*, 408 U.S. 471 (1972), by failing to hold a revocation

---

[1] After appellate briefing was completed, Fields moved to dismiss his new appointed counsel. The district court granted the motion, so Fields now proceeds *pro se*.

hearing and provide him a written explanation for its decision to revoke his supervised release. He asks us to vacate the agreed order revoking his supervised release and to remand to the district court for a revocation hearing.

## II.

Fields did not raise this due process issue below. Indeed, he agreed to the very order he now seeks to vacate. We therefore review for plain error. *See Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Botello*, 769 F. App'x 147, 148 (5th Cir. 2019).[2] Accordingly, Fields must show "clear or obvious" error that affected his substantial rights. *United States v. Vasquez*, 899 F.3d 363, 373 (5th Cir. 2018). And even if Fields can do so, we will exercise our discretion to correct such an error only if it "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Huntsberry*, 956 F.3d 270, 283 (5th Cir. 2020) (citation omitted).

## III.

Fields argues he was wrongfully denied a revocation hearing and written findings under *Morrissey*, 408 U.S. at 487–88. In that case, the Supreme Court held that a revocation defendant is entitled to a hearing that "lead[s] to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* at 488; *see also, e.g.*, *United States v. Turner*, 741 F.2d 696, 697 (5th Cir. 1984) (discussing *Morrissey*).[3] After the hearing, the court must issue a "written

---

[2] Fields's opening brief suggests we should review for abuse of discretion. But Fields—who filed no reply brief—offers no response to the government's argument that he failed to preserve this due process issue.

[3] *Morrissey* enumerated detailed requirements for this hearing, which have since been codified in the Federal Rules of Criminal Procedure. *See Morrissey*, 408 U.S. at 487–88; Fed. R. Crim. P. 32.1(b)(2)(A)–(E).

statement . . . as to the evidence relied on and reasons for revoking [supervised release]." *Morrissey*, 408 U.S. at 489. The hearing, however, need be held only if the defendant "desire[s]" it. *Id.* at 487–88. The Federal Rule of Criminal Procedure that codified *Morrisey*'s requirements similarly provides that the revocation hearing may be "waived" by the defendant. *See* FED. R. CRIM. P. 32.1(b)(2) (guaranteeing a revocation hearing "[u]nless waived by the person" in custody for violating a condition of probation or supervised release).

We see no violation of Fields's rights under *Morrissey*. The district court revoked Fields's supervised release without a hearing because Fields asked the court to do so. As discussed, Fields personally signed and—through counsel—submitted an order agreeing he had violated nine conditions and therefore revoking his release. He does not argue that his agreement was unknowing or involuntary. As the government correctly argues, then, Fields explicitly indicated he did not "desire" a revocation hearing and thus waived his right to a hearing. *Morrissey*, 408 U.S. at 487–88; FED. R. CRIM. P. 32.1(b)(2). Fields has no answer to the government's argument and, in fact, filed no reply brief at all. Accordingly, we see no error, plain or otherwise, under *Morrissey*.

In any event, Fields does not explain how the district court's supposed failure to hold a hearing affected his substantial rights. *Vasquez*, 899 F.3d at 373. As discussed, the only factual issue contested by the parties concerned Violation Number 1, the elder-assault charge. But the agreed revocation order explicitly excluded any finding that Fields committed that violation. So, we cannot see how the lack of a revocation hearing, even assuming it was error, affected Fields's substantial rights.

AFFIRMED.