*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

## S T A T E   O F   M I C H I G A N

## C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 15, 2021

Plaintiff-Appellee,

v

No. 347345
Livingston Circuit Court
LC No. 17-024485-FH

ANTHONY ACKLEY,

Defendant-Appellant.

Before: GADOLA, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

Following a bench trial, the circuit court convicted Anthony Ackley of assault of a prison employee, MCL 750.197c(1), and sentenced him to a prison term of three to 10 years. This trial should never have occurred. The circuit court improperly permitted the prosecutor to rescind the plea agreement he made with Ackley, and Ackley's trial counsel ineffectively failed to demand specific performance of that agreement. We vacate Ackley's conviction and sentence and remand for further proceedings before a different trial judge.

## I. BACKGROUND

The parties agree that Ackley is mentally ill and cognitively impaired. By age 23, when he committed the assault on a prison guard giving rise to this case, he had spent most of his adult life in prison. According to his counsel, Ackley was repeatedly raped while in the custody of the Michigan Department of Corrections (MDOC) and did not feel safe within the prison. On the day in question, Ackley rushed a guard, punching and scratching him because he wanted to call his family and was frustrated that he had lost his phone privileges.

While awaiting trial on the assault charge, Ackley was evaluated by a psychologist at the Center for Forensic Psychiatry and by an independent psychiatrist consulted by his counsel. The psychologist determined that Ackley was competent to stand trial and later opined that he was not criminally insane at the time of the assault. The psychiatrist found Ackley mentally ill, borderline

-1-

in intellectual function, and not criminally responsible. The psychiatrist's opinions likely incentivized the prosecutor to enter into the parties' plea deal.[1]

Defense counsel and the prosecutor negotiated a plea agreement permitting Ackley to plead guilty but mentally ill and to serve a one-year sentence in the county jail followed by a period of probation. On the day Ackley entered his plea, his counsel articulated that it had been his "goal throughout this" that Ackley would serve his sentence in jail so that he did not have to return to a prison setting. The assistant prosecuting attorney, Scott Ehlfeldt, concurred with the court's recitation that the parties had entered into "a sentence agreement of one year in the Livingston County Jail" with a possible term of probation to be determined by the court. After establishing Ackley's competency to plead guilty to both the underlying charge and to fourth habitual offender status, the court inquired, "Is everybody satisfied?" Ehlfeldt replied, "I am your Honor. I do want to make one thing clear. And I did not write it on the form, I should have done that." The prosecutor proceeded to explain that "[w]hen we say one year - - it's just prior experience when I say one year Livingston County Jail that's with no early release." Defense counsel concurred.

During the plea colloquy, the trial court asked Ackley to describe his understanding of the plea agreement and Ackley responded, "One year in the county jail." The judge confirmed Ackley's awareness that the court did not have to follow the plea agreement, and advised him that he would be allowed to withdraw his plea if the court imposed a sentence greater than one year in jail. At the end of the hearing Ehlfeldt asked Ackley additional questions to nail down Ackley's fourth habitual offender status. With that, Ackley's plea of guilty was formally accepted by the court.

One month later, the parties appeared for sentencing. Ehlfeldt began the hearing by backing out of the plea agreement:

> *Mr. Ehlfeldt*: There are contents of the [preliminary sentence investigation] report that I didn't necessarily have in play at the time I made this bargain so I guess I need to know quite honestly if the court's not gonna adopt it I prefer we deal with it at this point in time because he nut up [sic].

> *The Court*: He might what?

> *Mr. Ehlfeldt*: Kind of lose it a little bit.

Before the court answered, defense counsel entreated that the court abide by the agreement:

> *Defense Counsel*: I'm hoping the Court will be understanding [sic] the context of this multiple rape victim in the [MDOC] and his profound mental illness. He would be - - and recognizing that we had a similar case on the of [sic] criminal

---

[1] Plea deals benefit the prosecution by reducing the economic and manpower burdens associated with trials and appeals, not to mention eliminating the uncertainty inherent in every jury-tried case. Further, plea bargains permit the prosecutor to play an active and leading role in determining the defendant's sentence by offering a recommendation that courts generally follow.

responsibility with opposing findings by the Forensic Center and my psychiatrist that we came to a compromise with the guilty but mentally ill agreement with an understanding that he would do a solid one year in the Livingston County Jail.

> *Mr. Ehlfeldt*: That's correct.

> *Defense Counsel*: And it was a compromise. And my goal as - - I think I made clear to you even before [Ehlfeldt] was on this case was my job is to do everything I - - in my power to keep him from going back to MDOC. He's maxed out of that place. He's - - obviously one of the most profoundly mentally ill defendants that I've seen in my career. And I think that the - - we have given you a sufficient basis for going along with the prosecutor's recommendation. *And I'm hoping you will.* [Emphasis added.]

Defense counsel thereby objected to the prosecutor's effort to get out from under the plea deal. Essentially, defense counsel begged the court to abide by the deal.

The trial court turned to Ehlfeldt and inquired, "Are you asking me to go along with this?" Ehlfeldt responded, "I'm really really conflicted." He expounded, "The issue that I'm having is that there are - - the amount of misconducts that he had while in MDOC is kind of staggering." Ehlfeldt admitted that "there are issues of criminal responsibility I get it." He expressed concern that "we're gonna see him again," and stated that he was unaware of "[a] lot of his juvenile stuff[.]" Defense counsel responded:

> Sending him back to the environment where he's been raped repeatedly is - - he has all of these special offender notices in this file. Everywhere he goes in MDOC. I didn't prepare a sentencing memorandum for the Court in light of the fact that we had a prosecutor's sentence agreement. And I had provided you with information . . . . Sending him back to where [he] was raped is like the worst thing that could happen . . . . [A] year in the county with him on meds he hasn't caused [sic] meds while he's been incarcerated in Manistee or here. And it's a resolution of the case without having a trial.

This was a second objection to the prosecutor's effort to breach the plea agreement, and a second request that the court disallow the prosecutor's attempt to breach the contract.

Ehlfeldt then asked defense counsel, "Where's he gonna live when he eventually gets out?" After some discussion of that subject, the following critical colloquy occurred:

> *Defense Counsel*: . . . And I know you have a lot of experience in that before you were on the bench with the Community Mental Health. I recall that. The (indecipherable) of not following through with the agreement that we contemplated would be a trial. And the outcome is not certain. And as it is plausible that the Court could find yourself in a situation of having to sentence a person found guilty to an MDOC sentence and that option is, is trouble. I think we found the compromise. *And I want you to, to agree to sentence him in accordance with what the prosecutor recommended at the time of the taking of the guilty but - -*

*The Court*:  Well I guess that - -

*Defense Counsel*:  - - mentally ill - -

*Mr. Ehlfeldt*:  The problem that I'm having is –

*The Court*:  I guess my question here is are you asking me to follow this plea - -

*Mr. Ehlfeldt*:  And here's where - -

*The Court*:  *The only way I'm going under the guidelines in this situation is by plea agreement.*  [Emphasis added.]

Defense counsel's request that the court sentence Ackley in accordance with the plea bargain was a third objection to Ehlfeldt's maneuvering.

Ehlfeldt continued to explain why he wanted to get out from under the plea agreement, insisting that he was unaware of the extent of Ackley's juvenile record and the number of misconducts in his MDOC history.  Defense counsel pointed out that Ehlfeldt had spoken about the plea deal with the Prosecuting Attorney for Livingston County; Ehlfeldt admitted to having done so.

Defense counsel implored, "This has been contemplated for months and months."  Ehlfeldt asked the court for more time "to kind of look at this."  The court and the parties then discussed the options available for other pleas and for mental health treatment.  The court indicated that it was planning to sentence Ackley to "five years probation," presumably to follow the one-year jail term.  Ehlfeldt expressed concern about what would happen when Ackley was "under community supervision."  He continued, "[I]f we leave here today imposing this sentence and give him probation are we all gonna have this pit in our stomachs saying . . . are we gonna hear of something up in Roscommon?"[2]  Notably, the court never expressed any discomfort with the agreed-upon sentence of one year in jail.

Ultimately, the court and the attorneys agreed to adjourn the sentencing.  Ehlfeldt elaborated that the adjournment was "quite frankly . . . absolutely the People's request.  There are as we discussed at the bench some troubling thing[s] that appeared [in the] presentence report that have frankly added an additional layer on top of an already complicated situation."  Defense counsel agreed to the adjournment.

The parties reconvened two months later.  Ehlfeldt began as follows:

Your Honor, it's - - as the Court may recall we adjourned this for several weeks to kind of take a good hard look at where this case is at and the appropriate sentence for the defendant.  I know the Court gave some indication at the bench last

---

[2] Ackley was from Roscommon.

-4-

time we were here. After a lot of thought and a lot of conversation with my supervisors I can't ask the Court to honor the sentence agreement of one-year jail.

Defense counsel indicated that he had already discussed the matter with the prosecutor, understood his position, and that Ackley understood "what his remedy is in light of this." That remedy, the court and counsel agreed, was to withdraw the plea. The court reiterated that "if this is no longer a stipulated sentence or a sentence agreement I am not inclined to go along with it."[3]

The court conducted a bench trial, found Ackley guilty but mentally ill, and sentenced him to a minimum of three years in the Department of Corrections. Not surprisingly, the court selected prison in part because it wanted to "keep[] the community safe":

I think clearly Mr. Ackley suffers from mental illness. And I don't necessarily agree that the, that prison is the appropriate place for him, and that he's necessarily gonna get the appropriate treatment. But when I consider that together with the Court's responsibility in protecting the community and keeping the community safe. I think ultimately the Court's analysis of the community safety piece and the risk to the community that I think Mr. Ackley poses whether it be unintentionally is too great for this Court to consider a probationary sanction.

The court further supported its sentencing decision by referencing Ackley's "conduct while he has been incarcerated," again echoing the prosecutor.

## II. PLEA WITHDRAWAL

Ackley first contends that the trial court erred in allowing the prosecutor to withdraw from the plea agreement. We agree that permitting the prosecutor to disavow the plea agreement was error. Our analysis is complicated, however, because Ackley subsequently agreed to precisely the same remedy—plea withdrawal.

"[C]riminal justice today is for the most part a system of pleas, not a system of trials. Ninety-seven percent of federal convictions and [94%] of state convictions are the result of guilty pleas." *Lafler v Cooper*, 566 US 156, 170; 132 S Ct 1376; 182 L Ed 2d 398 (2012). Four decades before the United States Supreme Court issued this pronouncement, the Court similarly recognized the central role played by plea bargaining and deemed the bargains worthy of constitutional protection. In *Santobello v New York*, 404 US 257, 262; 92 S Ct 495; 30 L Ed 2d 427 (1971), the Supreme Court declared that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello* instructs that a defendant has a due process right to enforce the terms of the agreement in the face of a prosecutor's breach. Accordingly, the

---

[3] Although not entirely clear, the court seemed to indicate that but for the prosecution's withdrawal from the plea agreement, it had planned to sentence Ackley to one year in jail and five years of probation. It bears emphasis that at no point did the court express that it had planned to disregard the plea agreement if the prosecutor went along with it.

prosecutor's refusal to honor the terms of the agreement he had forged with Ackley's counsel was an error of constitutional magnitude.

The first layer of our analysis is the simplest, because the trial court clearly committed a constitutional error in permitting the prosecutor to withdraw from the plea agreement over the timely and forceful objections of counsel. The court rules provide limited circumstances in which a plea agreement may be withdrawn, but none exist here. When a plea has been accepted but the defendant has yet to be sentenced, MCR 6.310(B)(1) permits plea withdrawal on the *defendant*'s motion or with the *defendant*'s consent, and subsection (2)(a) permits the *defendant* to seek withdrawal if "the court states that it is unable to follow" the agreed-upon sentencing parameters. MCR 6.310(E) provides the sole basis for a *prosecutor* to vacate a plea agreement and is inapplicable here: "On the prosecutor's motion, the court may vacate a plea if the defendant has failed to comply with the terms of a plea agreement." The court rules provided no mechanism for the prosecutor to change his mind.

The prosecutor's wrongful conduct deprived Ackley of his due process right to enforcement of the plea bargain. By the time the prosecutor got cold feet, it was simply too late to back out of the deal he had made. The prosecution had no legal right and no legal authority to withdraw from its agreement. By green-lighting the prosecutor's conduct, the court compounded the constitutional error. Accordingly, we have no difficulty concluding that as the events unfolded in the courtroom on the day that had been set for sentencing, the trial court should have advised the prosecutor that he could not withdraw from the plea because Ackley's counsel objected.

But ultimately Ackley choose a remedy: he withdrew his guilty plea. In *Puckett v United States*, 556 US 129, 137; 129 S Ct 1423; 173 L Ed 2d 266 (2009), the Supreme Court explained that a defendant aggrieved by a *Santobello* error has either of two remedies: specific performance of the plea agreement in the trial court, or plea withdrawal. Ackley opted for plea withdrawal.[4] When he did so, he extinguished the error arising from the prosecutor's breach and the court's failure to force the government to live up to its bargain.

Ackley's appellate counsel contends that counsel performed ineffectively in subsequently recommending and acquiescing to plea withdrawal, as the only appropriate remedy under the circumstances was specific performance. We agree and turn to an analysis of that argument.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

To obtain relief under an ineffective assistance theory, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that but for counsel's deficient performance, there is a reasonable probability that a different outcome would have obtained. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Both conditions are met here.

---

[4] An argument can be made that Ackley's counsel sought specific performance in the trial court and that remedy was denied. But counsel never used those words and cited no law, including *Santobello*, that would have pointed the court in the right direction.

Counsel made it abundantly clear that he did not agree with the prosecutor's change in position regarding Ackley's sentence. By doing so, he preserved an objection to the prosecutor's unconstitutional conduct. That objection should have triggered the trial court to order specific performance of the plea. And had defense counsel understood the law, he would have recognized that the only appropriate course of action under the circumstances was to insist on specific performance of the plea bargain. Concomitantly, he would have specifically demanded that remedy. Consistent with *Santobello*, Ackley then would have been sentenced by a judge who had not heard the litany of reasons offered by Ehlfeldt in support of a prison sentence.[5] While an untainted sentencing court may not have abided by the sentencing agreement, Ackley's position would have been no worse than it would have been had the prosecutor not withdrawn from it. After all, "the touchstone of *Santobello* is whether the prosecution met its commitment and not whether the court would have adopted the government's recommendation[.]" *Cohen v United States*, 593 F2d 766, 772 (CA 6, 1979).

## A. INEFFECTIVE ASSISTANCE

In *Santobello*, the United States Supreme Court tasked the trial court with determining the remedy for a breached plea agreement. The Court endorsed two potential remedies: specific performance of the plea agreement, "in which case [the defendant] should be resentenced by a different judge," or the grant of an opportunity to withdraw the plea. *Santobello*, 404 US at 263. The Supreme Court underscored the importance of the first remedy in *Puckett*, reiterating that "rescission is not the only possible remedy; in *Santobello* we allowed for a resentencing at which the Government would fully comply with the agreement—in effect, specific performance of the contract." *Puckett*, 556 US at 137. Specific performance is the preferred remedy in at least one federal circuit. See *United States v Clark*, 55 F3d 9, 14 (CA 1, 1995).

Here, counsel's ineffectiveness resided in his failure to insist on specific performance of the plea agreement, with sentencing to be performed by a different judge.

Objectively, counsel's decision to withdraw the plea qualifies as unreasonable. The record supplies no evidence that the choice to go to trial rather than to enforce the plea deal was strategic. Counsel never mentioned enforcement of the plea bargain; rather, he announced that Ackley understood "what his remedy is in light of this," signaling that he contemplated the existence of only one remedy. Nothing in the record demonstrates that counsel understood the law governing prosecutorial plea withdrawals, and that resentencing before a different judge was an option.

A trial was an exceptionally poor remedy, given that Ackley had no choice but to admit his guilt and to hope for a verdict of not guilty by reason of insanity—a result rarely obtained. While counsel had an expert regarding Ackley's mental state at the time of the crime, it was an uphill struggle. The prosecution, too, had an expert. And the evidence strongly suggested that the assault was triggered by Ackley's anger at not being allowed to make a phone call—a fact tending to discredit an insanity plea. A reasonably effective attorney who appreciated the existence of the

---

[5] See *Santobello*, 404 US at 263.

specific performance route to relief would have taken it rather than embarking on a road likely to lead to conviction.

Counsel's legal investigation was incomplete and inadequate, resulting in his ineffectiveness. Two months elapsed between the aborted sentencing hearing and Ackley's withdrawal of his plea. This was ample time in which to determine that specific performance remained a viable remedy. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 46 US at 690-691. Legal investigations are as critical as factual ones, particularly in unusual cases. See, e.g., *Padilla v Kentucky*, 559 US 356, 367; 130 S Ct 1473; 176 L Ed 2d 284 (2010); *United States v Mooney*, 497 F3d 397, 403 (CA 7, 2007). The only meaningful course of action available to Ackley was to insist that the plea agreement be honored. Counsel's choice to forego that option was both illogical and ineffective.

## B. PREJUDICE

It is impossible to know with absolute certainty whether a different judge would have honored the plea bargain had the prosecutor stuck to it. But that is not the test. If counsel had insisted on specific performance, Ackley would have been sentenced by a judge untainted by the prosecutor's breach. Returning the situation to the status quo ante would have resulted in the sentencing court's acceptance of the bargain or sentencing by a different and untainted judge— and that suffices to demonstrate prejudice.

The prosecutor entered into an affirmative agreement to recommend a one-year jail sentence. A prosecutor's sentencing recommendation often carries considerable weight, and the record validates the critical importance of the prosecutor's sentencing position. Instead of honoring that agreement, the prosecutor deliberately disowned the deal he himself had made, vigorously arguing against it. When the prosecutor breached the plea agreement, the court essentially confirmed that it would have abided by the sentencing arrangement agreed to by the parties had the prosecutor endorsed it: "The only way I'm going under the guidelines in this situation is by plea agreement."

The prosecutor later urged a prison sentence, and the same judge who heard the initial recommendation of a jail sentence ultimately imposed a prison sentence. The judge had approved the guilty plea incorporating the jail sentence, yet also listened as the prosecutor emotionally retracted it while simultaneously detailing a host of reasons for sentencing Ackley to prison. At sentencing, the judge echoed in large measure the sentiments expressed by the prosecutor when he negated the agreement. By advocating for a prison sentence, the prosecutor intended to influence the trial court, and his efforts bore fruit.

In every sentencing decision post-guilty plea, the court makes an independent judgment. But that judgment is influenced and informed by the parties' agreement. Here, the prosecutor advised the court that a one-year jail sentence was inappropriate due to Ackley's juvenile and prison records. Not only did the prosecutor breach the agreement, the prosecutor persuasively advocated for a prison sentence partly based on the prosecutor's belated and speculative

assessment that Ackley would commit crimes post-release. Manifestly, this argument colored the court's decision when it finally sentenced Ackley to three to 10 years' imprisonment.

"The integrity of our judicial system requires that the government strictly comply with its obligations under a plea agreement." *United States v Mondragon*, 228 F3d 978, 981 (CA 9, 2000). Permitting the prosecution to reap the rewards of its misconduct is a gross injustice to Ackley and licenses the prosecution to play fast and loose with the rules. Only Ackley bore the burden of the government's error, despite that the prosecutor blatantly violated Ackley's rights. For these reasons, we vacate defendant's conviction and sentence and remand for further proceedings before a different trial judge.

Given our resolution of Ackley's challenges surrounding the rescission of the plea agreement, we need not reach his challenge to the evidence at his trial.

We vacate Ackley's conviction and sentence and remand for further proceedings before a different trial judge consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens