# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,        )
                                     )
       v.                       )       ID. No. 1808010617
                                       )
JASON WHITE,                 )
                                     )
       Defendant.            )

## MEMORANDUM OPINION

Date Submitted:  November 16, 2023
Date Decided:  February 23, 2024

*Upon Consideration of Defendant's Motion for Postconviction Relief,*
**DENIED**

*Upon Consideration of Rule 61 Counsel's Motion to Withdraw,*
**GRANTED**

Erika R. Flaschner, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware.  Attorney for the State.

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, Delaware. Postconviction Counsel for Defendant Jason White.

**JURDEN, P.J.**

# I. INTRODUCTION

A jury found Jason White ("White") guilty of three counts of Drug Dealing, two counts of Aggravated Possession, and three counts of Endangering the Welfare of a Child.[1] White now moves for Postconviction Relief under Superior Court Criminal Rule 61 ("Rule 61 Motion"), claiming that, but for his Trial Counsel's ineffectiveness, he would have accepted a plea offer and received a lighter sentence than what he received following his trial.[2] This Memorandum Opinion addresses White's Rule 61 Motion and Rule 61 Counsel's Motion to Withdraw ("Motion to Withdraw").[3] For the reasons set forth below, White's Rule 61 Motion is **DENIED** and Rule 61 Counsel's Motion to Withdraw is **GRANTED**.

---

[1] D.I. 30.
[2] D.I. 44.
[3] D.I. 61.

## II. BACKGROUND AND PROCEDURAL HISTORY

A. Statement of Facts

On August 16, 2018, following an investigation into the sale of crack cocaine and heroin, police executed a search warrant at 115 Cross Avenue, New Castle, Delaware (the "Residence").[4] Upon arriving at the Residence, officers knocked on the front door to alert the occupants of their presence and waited for a response.[5] After a few moments, the officers proceeded to break down the door.[6] Almost simultaneously, Detective Sean Raftery ("Detective Raftery") broke through the bathroom window located adjacent to the front door.[7] After breaking the window, Detective Raftery moved the bathroom curtains aside and observed White attempt to enter the bathroom, make visual contact with Detective Raftery, and then flee from the bathroom back into the Residence.[8] White ignored Detective Raftery's commands to stop.[9]

Once inside the Residence, Chief Investigating Officer Detective Jared Miller ("Detective Miller") encountered three other adults, three children, and two dogs.[10] Before commencing the search of the Residence, Detective Bruce Ashby ("Detective

---

[4] D.I. 39 (hereinafter "Nov. 19, 2019 Trial Tr.") at 37, 39-40.
[5] *Id*. at 47.
[6] *Id*. at 120.
[7] *Id*. at 119-20.
[8] *Id*. at 121-22.
[9] *Id*. at 122-23.
[10] *Id*. at 47, 78. The other adults were identified by Detective Miller as Jay White, John Gildersleeve, and Connie White. *Id*. at 78.

3

Ashby") ordered one of the adults to secure the dogs.[11] While escorting the adult with the dogs to one of the bedrooms, Detective Ashby observed White standing in a hallway toward the back of the Residence.[12] Detective Ashby watched White appear to bend down, pick something up, and throw an object into one of the bedrooms located in the back right of the Residence.[13] White went into that same bedroom and disappeared from Detective Ashby's line of sight.[14] Detective Ashby ordered White to exit the bedroom.[15] White waited a few seconds before complying and surrendering.[16]

After securing the Residence, the officers conducted a search.[17] In White's bedroom,[18] officers found a small amount of marijuana,[19] boxes of empty plastic bags, cut straws, a smoking pipe, and three cell phones.[20] In the bedroom located in the back right of the house – the same bedroom Detective Ashby saw White enter and throw an object into[21] – officers found more than a dozen bags of heroin,

---

[11] D.I. 37 (hereinafter "Nov. 20, 2019 Trial Tr.") at 6. Detective Ashby was fitted with a body-worn camera that was recording during the execution of the search warrant. *Id*. at 8.
[12] *Id*. at 7.
[13] *Id*.
[14] *Id*.
[15] *Id*.
[16] *Id*.
[17] Nov. 19, 2019 Trial Tr. at 41.
[18] *Id*. at 45-46.
[19] Detective Miller testified at trial that the amount of marijuana found was small enough to be consistent with personal use. *Id*. at 84-85.
[20] *Id*. at 87. A subsequent search of the cell phones revealed that only one of them, the ZTE, held any information relevant to the instant investigation. Nov. 20, 2019 Trial Tr. at 75-76.
[21] Officers labeled this bedroom the "B/C bedroom." *Id*. at 7-8. They assigned a letter to each side of the house to identify where items were discovered during the search. Nov. 19, 2019 Trial

4

oxycodone, crushed green pills,[22] and crushed crystal meth on the floor.[23] Subsequent lab tests revealed the presence of more than twelve grams of a heroin and fentanyl mixture and more than five grams of crystal meth from the evidence recovered.[24] In the living room, officers found a digital scale and glass smoking pipe.[25]

Once the search was completed, Detective Miller interviewed White at the Residence.[26] During this interview, White denied any knowledge of the drugs found and stated he did not want to incriminate himself.[27] Later, while still at the Residence, White told one of the officers he wanted an ambulance to wash his hands.[28] When asked why he wanted to wash his hands, White said he "believed he was contaminated" and did not "want it to spread."[29]

White was arrested and taken to the New Castle County Police Department ("NCCPD") headquarters where he gave a second interview.[30] During this interview with Detective Miller, White admitted to selling heroin and methamphetamine and

---

Tr. at 112 ("A would be the front, and then going around the circle, B would be the left side, C would be the back, D would be the right side.").

[22] The green pills were later identified as oxycodone pills that contained fentanyl. Nov. 19, 2019 Trial Tr. at 59-61; Nov. 20, 2019 Trial Tr. at 65.

[23] Nov. 20, 2019 Trial Tr. at 57-59, 61-68.

[24] *See id.* at 44-50, 52-57, 60-68.

[25] Nov. 19, 2019 Trial Tr. at 69-70.

[26] *Id.* at 70.

[27] *Id.*

[28] *Id.* at 70-71.

[29] *Id.* at 71.

[30] *Id.* at 71-72; Nov. 20, 2019 Trial Tr. at 83-84.

admitted that all the drugs found at the Residence belonged to him.[31]

B. Procedural History[32]

On August 16, 2018, White was arrested in the instant case (hereinafter the "A Case") and posted bail.[33] While out on bail, police identified White as a participant in a drug trafficking organization, resulting in a Rule 9 Warrant in a new case, Case No. 1810008071 (hereinafter the "B Case").[34] White was indicted in the A and B Cases on October 22, 2018.[35]

On December 17, 2018, White failed to appear for his Case Review in the A Case and the Court issued a capias.[36] On December 21, 2018, White failed to appear for his arraignment in the B Case and the Rule 9 Warrant remained outstanding.[37]

In May 2019 police received a tip from a confidential source as to where White was residing and that he was selling heroin, methamphetamine, and cocaine

---

[31] *White v. State*, 258 A.3d 147, 153 (Del. 2021).

[32] All references to the Appendix provided by Rule 61 Counsel in his Memorandum in Support of Motion to Withdraw are hereinafter referred to as "A__."

[33] D.I. 1.

[34] D.I. 61 (hereinafter "Mem. in Supp. of Mot. to Withdraw") at 2-3. Delaware Superior Court Docket ID No. 1810008071 ("D.I. _B") at 1B.

[35] D.I. 2; D.I. 2B. The indictment in the B Case charged White with: Conspiracy to Commit Racketeering (IN18-10-1725W); Drug Dealing, 4 or more grams of heroin (IN18-10-1726W); and Aggravated Possession, 5 or more grams of heroin (IN18-10-1727W). A38-64. White's indictment in the B Case was sealed until December 5, 2018, when the Court Ordered it unsealed. D.I. 5B.

[36] D.I. 5.

[37] D.I. 8B.

out of his home.[38] Following an investigation and police surveillance,[39] White was arrested on June 4, 2019,[40] and then indicted in a third case, Case No. 1906002560 (hereinafter the "C Case") following the arrest.[41]

On June 5, 2019, the Capias was returned in the A Case, and bail was temporarily revoked due to the series of new charges.[42] On July 1, 2019, the Court entered a Scheduling Order in the A Case.[43] White was scheduled for a Case Review on July 8, 2019, Final Case Review on October 21, 2019, and Trial on November 19, 2019.[44]

On October 2, 2019, in accordance with Superior Court Rule 16, the State provided Trial Counsel with discovery for the A Case, including the Report of Detective Miller; advised Trial Counsel that the "defendant made statements that were audio/video recorded"; "body-worn camera footage exists"; and noted that no

---

[38] Mem. in Supp. of Mot. to Withdraw at 3; A29.

[39] During the week of May 26, 2019, officers conducted surveillance on the home White was reportedly staying at. A29-30. Officers were able to observe White at this residence. *Id.* The officers discontinued their surveillance after a few hours "to protect the integrity of the investigation." A30. It was not until June 4, 2019, that officers encountered White again, but this time in the Christiana Mall parking lot. *Id.* Officers proceeded to detain White. *Id.*

[40] A29-30.

[41] A65-68. White was indicted in the C Case on September 16, 2019 with: Drug Dealing, 4 or more grams of heroin (IN19-06-1052); Aggravated Possession, 5 or more grams of heroin (IN19-06-1053); Drug Dealing, marijuana (IN19-06-1055); Aggravated Possession, 175 or more grams of marijuana (IN19-06-1056); Operating or Attempting to Operate a Clandestine Laboratory (IN19-06-1054); Conspiracy Second Degree (IN19-09-1231); and Possession of Drug Paraphernalia (IN19-09-1232). *Id.*; Delaware Superior Court Docket ID No. 1906002560 ("D.I. _C") at 3C.

[42] Mem. in Supp. of Mot. to Withdraw at 2; D.I. 9.

[43] D.I. 17.

[44] *Id.*

7

plea offer was being offered at that time.[45]

White was re-indicted in the A Case on October 14, 2019,[46] and again on October 28, 2019.[47] The October 28, 2019, indictment charged him with the following:

- Drug Dealing, 4 or more grams of heroin (IN19-10-1257)
- Aggravated Possession, 5 or more grams of heroin (IN19-10-1258)
- Drug Dealing, methamphetamine (IN19-10-1259)
- Aggravated Possession, 25 or more grams of methamphetamine (IN19-10-1260)
- Drug Dealing, 30 or more oxycodone pills (IN19-10-1261)
- Endangering the Welfare of a Child (IN19-10-1262)
- Endangering the Welfare of a Child (IN19-10-1263)
- Endangering the Welfare of a Child (IN19-10-1264)[48]

At his October 21, 2019 Final Case Review, the Court asked Trial Counsel if the November trial date in the A Case was set to move forward.[49] The State indicated that if White was going to accept a plea before the trial date it would be for *all three* of White's cases (meaning Cases A, B, and C).[50] When the Court asked if such a global plea would occur within the month, Trial Counsel responded that he could not be certain and added, "there has been a plea that one should think about here.

---

[45] D.I. 18. The letter reads, "The State makes the following plea offer: None at this time." The letter goes on to state that if White was inclined to accept any plea offer in the instant case he should advise the State so the parties could discuss the matter and the State could make a firm offer. *Id.*

[46] D.I. 19.

[47] D.I. 24.

[48] *Id*.

[49] D.I. 19; D.I. 51 (hereinafter "FCR Tr.") at 4.

[50] FCR Tr. at 4.

8

It's been communicated to my client. He's rejected it."[51] Trial Counsel was referring to the only plea offered in *this case*.[52] The terms of the Global Plea were as follows: White would plead guilty to Drug Dealing, Tier 4 (Heroin) (IN-19-10-1257); Conspiracy to Commit Racketeering (IN-18-10-1725); and Drug Dealing, Tier 4 (Heroin) (IN-19-06-1052), and the State would agree to cap its unsuspended Level V recommendation at 15 years.[53] This plea offer called for open sentencing, a presentence investigation, and the Level V time to run consecutively.[54] White rejected the plea.[55]

## C. Evidence Presented at Trial

On November 19, 2019, White went to trial in the A Case.[56] The State presented testimony from the Chief Investigating Officer, Detective Miller;[57] Detective Ashby and Detective Raftery, who were at the Residence during the execution of the search;[58] a forensic analyst who provided expert testimony about

---

[51] *Id*. at 4-5.
[52] Across all three of White's cases, four pleas were offered, but only one concerned the A Case (hereinafter the "Global Plea"). A864.
[53] *Id*.
[54] *Id*. The minimum mandatory for this plea would have been six years.
[55] Rule 61 Counsel states in his Memorandum that "there does not appear to be a record of rejection of this plea" (Mem. in Supp. of Mot. to Withdraw at 15), but the transcript from the Final Case Review makes clear that the Global Plea was communicated to White and he rejected it. *See* FCR Tr. at 5.
[56] D.I. 28.
[57] *See* Nov. 19, 2019 Trial Tr. at 36-111; Nov. 20, 2019 Trial Tr. at 70-135; D.I. 38 (hereinafter "Nov. 21, 2019 Trial Tr.") at 4-16.
[58] *See* Nov. 19, 2019 Trial Tr. at 117-128; Nov. 20, 2019 Trial Tr. at 3-30.

9

the evidence recovered;[59] and Detective Alexis Schupp ("Detective Schupp") who provided expert testimony about narcotics trade.[60] The State's witnesses provided testimony linking White to the drugs and the jury heard testimony that White confessed to possessing and dealing drugs.[61] The State introduced the body worn camera footage recovered from Detective Ashby's camera,[62] and text messages from one of the recovered phones which Detective Schupp testified were demonstrative of drug dealing.[63] The State also presented a wiretap recording which captured White on the phone talking about the search and his attempts to dispose of the drugs.[64]

On November 22, 2019, the jury found White guilty of all charges in the A Case.[65] On January 7, 2020 White accepted a plea offer in the B Case,[66] and on

---

[59] *See* Nov. 20, 2019 Trial Tr. at 31-70. Ms. Nicole Gerlach ("Gerlach"), a forensic scientist, provided expert testimony and identified the substances recovered from the Residence along with the quantity in which they were found. *Id*.

[60] *See* Nov. 21, 2019 Trial Tr. at 16-82. Detective Schupp testified in his capacity as an officer in the organized crime and vice division and testified regarding the typical patterns found in drug dealing transactions. *Id*.

[61] *See* Nov. 20, 2019 Trial Tr. at 119-21.

[62] *Id*. at 8-9.

[63] *See generally*, Nov. 21, 2019 Trial Tr. at 46-55.

[64] *See* Nov. 20, 2019 Trial Tr. at 143. At sidebar, Trial Counsel objected to the admissibility of the recording, arguing that Detective Thomas Macauley ("Detective Macauley") had not clearly established his familiarity with White's voice during cross-examination. *Id*. at 150-52. In response, the State informed the Court that Detective Macauley's familiarity with White's voice was the result of a separate discussion involving a different investigation. *Id*. at 152. To avoid opening the door to this prejudicial information, Trial Counsel withdrew his objection, and the recording was admitted. *Id*. at 153-55.

[65] D.I. 30.

[66] D.I. 27B.

March 3, 2020, White accepted a plea offer in the C Case.[67] On August 28, 2020 White was sentenced for the A, B, and C Cases.[68]

### i. Sentencing

The Court sentenced White in the A Case as follows: for Drug Dealing, Tier 4 (IN19-10-1257), 25 years at Level V suspended after 2 years, for 2 years at Level IV DOC Discretion suspended after 6 months, for 18 months at Level III; for Drug Dealing, Tier 4 (IN19-10-1259), 2 years at Level V; for Drug Dealing, Tier 2 (IN19-10-1261), 2 years at Level V; and for each count of Endangering the Welfare of a Child (IN19-10-1262, IN19-10-1263, IN19-10-1264), 1 year at Level V suspended for 1 year Level III.[69]

The Court sentenced White in the B Case as follows: for Racketeering (IN18-10-1725), 2 years at Level V.[70]

The Court sentenced White in the C Case as follows: for Drug Dealing, Tier 4 (IN19-11-0382), 2 years at Level V.[71]

In total, White was sentenced to 10 years of unsuspended Level V time: 6 years in the A Case, and 2 years in the B Case and 2 years in the C Case.[72]

---

[67] D.I. 15C.
[68] D.I. 33.
[69] *Id.* At sentencing the Court merged the following charges: Aggravated Possession (IN19-10-1258) with Drug Dealing, Tier 4 (IN19-10-1257); and Aggravated Possession (IN19-10-1260) with Drug Dealing, Tier 4 (IN19-10-1259). *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.*

11

D. Postconviction Procedural History in the A Case

On September 27, 2020, White, represented by Appellate Counsel,[73] filed a Notice of Appeal in the A Case.[74] On Appeal, Appellate Counsel presented two claims of error.[75] On August 6, 2021, the Delaware Supreme Court affirmed White's conviction.[76]

On March 22, 2022, White filed the instant *pro se* Rule 61 Motion.[77] On April 7, 2022, the Court asked Trial Counsel to file an Affidavit in response to the allegations in White's Rule 61 Motion.[78] On April 26, 2022, White filed a Motion for Appointment of Counsel,[79] which the Court granted on June 2, 2022.[80] On October 17, 2022, Patrick Collins, Esq. was appointed as Rule 61 Counsel.[81]

On June 22, 2023, Rule 61 Counsel filed a Motion to Withdraw because he determined White had no meritorious postconviction claims.[82] On June 23, 2023,

---

[73] John Malik, Esq. was White's Trial Counsel and Appellate Counsel, and represented White in all three of his cases.
[74] D.I. 34.
[75] Appellate Counsel argued that the Superior Court abused its discretion when it admitted text messages from one of the cell phones seized during the search because the State failed to authenticate the texts pursuant to DRE 901. *See* D.I. 48, A664. Appellate Counsel also argued that the prosecutor made improper arguments during the rebuttal summation by stating his personal opinion about a piece of evidence, misstating the burden of proof, and denigrating the role of defense counsel. *See* D.I. 48, A664.
[76] *White v. State*, 258 A.3d 147 (Del. 2021), D.I. 43.
[77] D.I. 44.
[78] D.I. 46. Trial Counsel's affidavit was filed on May 19, 2022. D.I. 48.
[79] D.I. 47.
[80] D.I. 49.
[81] D.I. 53.
[82] Mem. in Supp. of Mot. to Withdraw

White responded to Rule 61 Counsel's Motion to Withdraw.[83]  On November 16, 2023, the State responded to the Rule 61 Motion.[84]  White did not reply to the State's response.[85]

White argues that Trial Counsel was ineffective for failing to notify him of two pieces of evidence that were presented at his trial, and White was prejudiced because had he known about the evidence "he would have accepted one of the State's plea offers" and received a lighter sentence.[86]

### III. STANDARDS OF REVIEW

A.   Rule 61: Procedural Bars to Postconviction Relief

Superior Court Criminal Rule 61 governs postconviction relief.[87]  Under Rule 61, an incarcerated individual may seek to dismiss his conviction by establishing a lack of jurisdiction, or alternative ground, that sufficiently establishes a factual and legal basis for a collateral attack upon the conviction.[88]  While "Rule 61 is intended to correct errors in the trial process, [it does] not allow defendants unlimited opportunities to relitigate their convictions."[89]  Before considering the merits of any

---

[83] D.I. 64.
[84] D.I. 69.
[85] The Scheduling Order stated, "Should White choose to reply to the State's response to the Motion for Postconviction Relief, he shall file his reply within 30 days of service of the response." D.I. 65.
[86] Mem. in Supp. of Mot. to Withdraw at 13.
[87] Super. Ct. Crim. R. 61(a)(1).
[88] *Id*.
[89] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).

postconviction relief claims, the Court must first consider whether any procedural bars exist.[90] Rule 61(i) establishes four procedural bars to postconviction relief.[91] Rule 61(i)(1) requires a motion for postconviction relief be filed within one year of a final judgment or conviction.[92] Rule 61(i)(2) bars successive motions for postconviction relief unless certain conditions are met.[93] Pursuant to Rule 61(i)(3) and (4), any ground for relief not previously raised is deemed waived and any claims formerly adjudicated are thereafter barred.[94] There is an exception to the Rule 61(i)(3) procedural bar to relief. A movant may overcome procedural defaults if they show "(A) cause for relief from the procedural default and (B) prejudice from violation of the movant's rights."[95] A "cause" from procedural default can be shown through an ineffective assistance of counsel ("IAC") claim.[96] Since IAC claims

---

[90] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[91] Super. Ct. Crim. R. 61(i)(1)-(4).

[92] Super. Ct. Crim. R. 61(i)(1).

[93] Rule 61(i)(2) bars successive or subsequent motions for postconviction relief unless the movant is able to "pled with particularity" that (i) "new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted" or (ii) "a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid." Super. Ct. Crim. R. 61(d)(2).

[94] This includes proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding. *See* Super. Ct. Crim. R. 61(i)(5), (d)(2)(i), (ii).

[95] Super. Ct. Crim. R. 61(i)(3)A, B.

[96] *Younger*, 580 A.2d at 556.

cannot be raised at any earlier stage in the proceedings, they are properly presented by way of a motion for postconviction relief.[97]

### B. Rule 61: Ineffective Assistance of Counsel

To succeed on an IAC claim, a defendant must satisfy the standard set forth in *Strickland v. Washington*.[98] That is, the defendant must demonstrate that: (1) trial counsel's performance was deficient,[99] and (2) the defendant was prejudiced by the deficiency.[100] To establish prejudice, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[101] In the context of plea agreements, to show prejudice "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."[102] Further, the defendant must demonstrate "a reasonable probability the plea would have been entered" and "a reasonable probability that the end result of the criminal

---

[97] *Sabb v. State*, 2021 WL 2229631, at *1 (Del. May 28, 2021); *Green v. State*, 238 A.3d 160, 187-188 (Del. 2020); *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).
[98] 466 U.S. 668, 694 (1984).
[99] *Sykes v. State*, 147 A.3d 201, 211 (Del. 2015) (citing *Strickland*, 466 U.S. at 694).
[100] *Strickland*, 466 U.S. at 694.
[101] *Id*.
[102] *Missouri v. Frye*, 556 U.S. 134, 147 (2012).

15

process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."[103]

Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's conduct fell within a wide range of reasonably professional assistance.[104]  Mere allegations of ineffectiveness are not enough.[105]  A petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness under prevailing professional norms."[106] Counsel "may not be faulted for reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."[107]  There is a strong presumption that a defense counsel's conduct constituted sound trial strategy[108] and a defendant must make and substantiate concrete allegations that overcome this presumption.[109]  The "[b]enchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[110]

---

[103] *Id.*

[104] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); *Salih v. State*, 2008 WL 4762323, at *1 (Del. Oct. 31, 2008).

[105] *Younger*, 580 A.2d at 556.

[106] *Strickland*, 466 U.S. at 687-88.

[107] *State v. Finn,* 2012 WL 1980566, at *4 (Del. Super. May 23, 2012) (citing *Harrington v. Richter,* 562 U.S. 86, 102-110 (2011)).

[108] *Strickland*, 466 U.S. at 694.

[109] *See Salih*, 962 A.2d at 257; *see also Albury*, 551 A.2d at 59.

[110] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009) (internal quotations omitted).

## C. Rule 61: Motion to Withdraw

Pursuant to Superior Court Criminal Rule 61(e)(7), Rule 61 Counsel may move to withdraw if they find the movant's claim to be "so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant."[111] When evaluating a motion to withdraw, the Court must be satisfied that moving counsel made conscientious examinations of the record and the law for any claims that could arguably support the Rule 61 motion.[112] The Court should also undertake its own review of the relevant claims to determine whether the Rule 61 motion would be devoid of "any, at least, arguable postconviction claims."[113]

## IV. DISCUSSION

### A. Ineffective Assistance of Counsel Claim

This is White's first Rule 61 Motion, and it is timely. Further, White is asserting an IAC claim that overcomes the procedural bar of Rule 61(i)(3).[114] White claims that Trial Counsel was ineffective for failing to notify him of two pieces of evidence,[115] and if counsel had made him aware of the evidence, White would have

---

[111] Super. Ct. Crim. R. 61(e)(7).
[112] *State v. Coston*, 2017 WL 6054944, at *2 (Del. Super. Dec. 7, 2017).
[113] *Id.*
[114] D.I. 64.
[115] White asserts he was not informed of the wiretap phone call and the body camera footage shown at trial. Mem. in Supp. of Mot. to Withdraw at 13.

accepted a plea.[116]

To prevail on his IAC claim, White must show that Trial Counsel's conduct was objectively unreasonable and, but for Trial Counsel's conduct, the result would have been different.[117] There is no need to address the *Strickland* objective unreasonableness prong if there was no prejudice to the defendant.[118] The defendant must make "concrete allegations of actual prejudice and substantiate them or risk summary dismissal."[119] If the defendant is unable to show prejudice, his IAC claim will be denied.[120] To establish prejudice in a case where the defendant rejected a plea because of counsel's deficient performance, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."[121]

### i. The Plea Offers

White alleges he was offered "a max four year plea to wrap up" Cases A, B,

---

[116] D.I. 64.

[117] *Strickland*, 466 U.S. at 694.

[118] *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant.").

[119] *Outten v. State*, 720 A.2d 547, 557 (Del. 1998).

[120] *Ploof*, 75 A.3d at 825.

[121] *Frye*, 566 U.S. at 147.

and C.[122]  The record is devoid of any such plea offer.[123]  As noted above, White received four plea offers.[124]  The first plea offered was to Conspiracy to Commit Racketeering in the B Case and called for open sentencing.[125]  The second plea offered was to Conspiracy to Commit Racketeering in the B Case and Drug Dealing Tier 4 (Heroin) in the C Case, and called for open sentencing.[126]  The third plea offered was the Global Plea previously discussed,[127] which included one count from each indictment.[128]  It is this Global Plea that was discussed at White's Final Case Review in the A Case.[129]  The fourth plea offered was to Drug Dealing Tier 4 (Cocaine) in the C Case, and called for open sentencing.[130]  In the Global Plea, the State agreed to cap its unsuspended Level V recommendation to 15 years, called for open sentencing, a presentencing investigation, and for the Level V time to run consecutively.[131]  Trial Counsel represented to the Court at Final Case Review that

---

[122] D.I. 64.

[123] The State and Trial Counsel have communicated to Rule 61 Counsel that while there may have been discussions about White cooperating with the State, neither party recalls any discussion about a specific number of years.  Mem. in Supp. of Mot. to Withdraw at 14.

[124] Mem. in Supp. of Mot. to Withdraw at 5; A862-65.

[125] A862.  The record reflects that White accepted this plea in the B Case on January 7, 2020.  D.I. 27B.

[126] A863.  On page 14 of his Memorandum, Rule 61 Counsel incorrectly states that this particular plea concerned the A and B Cases.  This is incorrect.  This plea offer involved Cases B and C. *See Id.*

[127] *See supra* p. 9.

[128] *See* Mem. in Supp. of Mot. to Withdraw at 15; A864.

[129] Mem. in Supp. of Mot. to Withdraw at 15.

[130] A865.  The record reflects White accepted this plea in the C Case on March 3, 2020.  D.I. 15C.

[131] A864.  The minimum mandatory for this plea would have been six years.  Mem. in Supp. of Mot. to Withdraw at 15.

19

White rejected the Global Plea.[132]  White proceeded to trial where he was found guilty of all charges in the A Case.[133]

## ii. Sentencing

At White's August 28, 2020 sentencing in all three cases (A, B and C), the State asked for 15 years of unsuspended Level V time.[134]  The State noted that White was a career drug dealer as evidenced by his numerous convictions over the years.[135]  Trial Counsel presented mitigating factors and argued for concurrent rather than consecutive, sentencing.[136]  The Court merged the aggravated possession charges with the drug dealing charges.[137]  The Court concluded that the non-concurrent minimum mandatory of 10 years was a fair resolution[138] and sentenced him to 10 years at Level V with descending levels of community supervision to follow.[139]

---

[132] FCR Tr. at 4-5.

[133] D.I. 30.  After Trial, White took a plea in his two remaining cases.  Mem. in Supp. of Mot. to Withdraw at 4.

[134] D.I. 35 ("Sentencing Tr.") at 5.  The State's recommended cap of 15 years unsuspended Level V time was the same as the cap contained in the plea.  *See* A864.

[135] *See* Sentencing Tr. at 5-6.

[136] *Id*. at 15-19, 23-24.  Concurrent sentencing would have resulted in a minimum mandatory of four-years.  *Id*. at 13.  At Sentencing, Trial Counsel argued the following: "So, Your Honor, it's my request that the Court temper the sentence.  Again, the state asked for 15.  The minimum-mandatory is four.  Being realistic, I'm not going to ask the Court to do that, but I would ask that the Court sentence him in the middle and at least for some of the drug charges to run concurrently with the racketeering case, so that there is a sentence between what the minimum is and what the state is requesting of 15 years." *Id*. at 23-24.

[137] The Court merged the following charges: Aggravated Possession (IN19-10-1258) with Drug Dealing, Tier 4 (IN19-10-1257); and Aggravated Possession (IN19-10-1260) with Drug Dealing, Tier 4 (IN19-10-1259).  D.I. 33.

[138] *See* Sentencing Tr. at 28.  The parties agreed that if the Level V time ran consecutively than the minimum mandatory was 10 years.  *See id*. at 13-14.

[139] *See* D.I. 33.

Even, assuming *arguendo*, like White claims, a four-year global plea offer was made to White at some point, the Court was under no obligation to accept that recommendation, and White has not argued the Court would have followed such a recommendation. Further, in accordance with Rule 11, any recommendations made during the plea negotiation process are not binding upon the court.[140] At sentencing, the Court had the discretion to run White's Level V sentences concurrently and decided not to, stating:

> The minimum sentence, if I don't run things concurrently, is ten years. I think that is sufficient to justify the sentence. I think the 15 years that's being asked by the state is excessive, but I think four which, in essence, would have been the minimum [had the sentences run concurrently] is not reflective of the conduct.[141]

Based on the record, White has failed to demonstrate that he was prejudiced by the alleged ineffectiveness of Trial Counsel.

For all these reasons, White's IAC claim is meritless, and his Rule 61 Motion must be **DENIED**.

B. Rule 61 Counsel's Motion to Withdraw

On June 22, 2023, Rule 61 Counsel filed a Motion to Withdraw as Postconviction Counsel pursuant to Superior Court Criminal Rule 61(e)(6) after

---

[140] Super. Ct. Crim. R. 11(e)(1)(B).
[141] Sentencing Tr. at 28.

determining White had no meritorious postconviction claim.[142]  Rule 61(e)(7) provides that:

> [i]f counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw.  The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.[143]

After undertaking a thorough examination of the record to evaluate White's claim, Rule 61 Counsel has determined the claim to be so lacking in merit that he cannot ethically advocate them.[144]  Rule 61 Counsel is not aware of any other substantial claims for relief available to White, and because he finds no potential meritorious grounds on which to base a Rule 61 motion, he seeks to withdraw as counsel.[145]  The Court is satisfied that Rule 61 Counsel has made a conscientious and thorough examination of the record and, upon *de novo* review of the record, the Court finds that White's Rule 61 Motion is devoid of any meritorious postconviction claim.  Consequently, Rule 61 Counsel's Motion to Withdraw is **GRANTED**.

---

[142] *See* Motion to Withdraw along with the accompanying Memorandum in Support of Motion to Withdraw and Appendix.  D.I. 61, D.I. 62, D.I. 63.
[143] Super. Ct. Crim. R. 61(e)(7).
[144] *See* Mem. in Supp. of Mot. to Withdraw.
[145] *Id*.

## V. CONCLUSION

For these reasons, White's Motion for Postconviction Relief is **DENIED** and Rule 61 Counsel's Motion to Withdraw is **GRANTED.**


**IT IS SO ORDERED.**


                    <u>/s/ Jan R. Jurden</u>
                    Jan R. Jurden, President Judge

Original to Prothonotary

cc:    Jason White, Defendant
        Erika R. Flaschner, DAG
        Patrick J. Collins, Esq.