[Cite as *State v. Madison*, 2025-Ohio-5034.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

KY-ASHIA DUSHAY TYUONA MADISON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MA 0037**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2023 CR 00867

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lynn Maro,* Mahoning County Prosecutor, *Atty. Kristie M. Weibling*, Assistant Mahoning County Prosecutor, for Plaintiff-Appellee and

*Atty. James R. Wise*, for Defendant-Appellant.

Dated:  November 5, 2025

**Robb, P.J.**

{¶1} Defendant-Appellant Ky-Ashia Dushay Tyuona Madison appeals the decision of the Mahoning County Common Pleas Court imposing sentence after her guilty plea. Appellant argues her attorney was ineffective at sentencing by not seeking a recess. She also contends the court failed to properly address her attorney's argument that the state breached the plea agreement by asking for consecutive sentences instead of standing silent where the written plea said, "The State of Ohio . . . has agreed to recommend . . . Prison term." For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2} On December 28, 2023, Appellant was indicted on eleven counts after her SUV crashed into a car on August 16, 2023 while she was intoxicated and driving under suspension. After various Crim.R. 11 pretrials and continuances, a plea agreement was reached on March 3, 2025 (just as the rescheduled jury trial was beginning).

{¶3} Appellant pled guilty to six counts: aggravated vehicular homicide, a first-degree felony (for the occupant of the car who died); three counts of aggravated vehicular assault, second-degree felonies (one count for each of the three surviving occupants of the car); one count of endangering children, a first-degree misdemeanor (for Appellant's four young children occupying her SUV); and operating a vehicle while intoxicated, a first-degree misdemeanor. The first four charges contained specifications based on her driving under suspension at the time of the crash.

{¶4} The written plea agreement explained the maximum sentence of incarceration was 11-16.5 years for the first-degree felony with prison mandatory, 8 years for each second-degree felony with prison mandatory, and 180 days for each first-degree misdemeanor. It also explained she was not eligible for community control. The state agreed to dismiss the other charges (which were essentially alternative offenses), and a subsequent clause provided:

> The State of Ohio, as part of this Crim.R. 11(F) agreement, has agreed to recommend the following:

ODRC-SB 201    Sentencing of _____ to _____ years
_____*Prison term*_____

(Original all caps.) (3/4/25 Signed Plea Agreement).

**{¶5}** This clause was a pre-printed part of the form plea agreement with the exception of the phrase "Prison term" that was handwritten on the blank. The agreement signed by Appellant further contained a clause stating, "I recognize that sentencing lies solely within the discretion of the court and that any agreement between counsel for the state of Ohio and my attorney is merely a recommendation."

**{¶6}** At the plea hearing, the prosecutor recited the agreement to the court by listing the six counts to which Appellant would be pleading guilty, and defense counsel agreed the recitation was accurate. (Plea Tr. 2). Appellant told the court she went over the written plea agreement with her attorney and understood the agreement memorialized her intent to withdraw her former plea of not guilty and enter a plea to six counts, which the court listed. The court advised Appellant of her constitutional and non-constitutional rights under Crim.R. 11. Appellant said the agreement was fully explained to her and she was not promised anything. (Plea Tr. 7-8). The court accepted her guilty plea to the six counts, dismissed the other five counts, and set the case for sentencing.

**{¶7}** On the day of sentencing, the state filed a sentencing memorandum (with a certificate of service stating it was emailed to Appellant's attorney the prior day). The document's recitation of facts explained Appellant was driving drunk with a suspended license on Victor Avenue in Youngstown when she aggressively accelerated into the oncoming lane to pass the car in front of her. Her SUV crashed into the driver's side of the car as it was turning left, causing the car to spin into a front yard. Both vehicles sustained heavy damage.

**{¶8}** The SUV's crash data recorder showed Appellant was speeding at a rate of 56 mph in a 25 mph zone; her accelerator and throttle position were at 100% in the second before impact. Appellant's blood alcohol concentration (BAC) measured .255, more than three times the legal limit. An open bottle of tequila was found on the driver's side floor of the SUV she was driving.

**{¶9}** The other occupants of the SUV were Appellant's four young children, ages nine, five, two, and one. A relative took the children from the scene, and they were not medically evaluated for any injuries from the crash.

**{¶10}** The car Appellant hit contained four teenage occupants. Denasia Douglas, the 19-year-old passenger, was initially trapped in the car. A responding officer detected no pulse. She was pronounced dead at the hospital. The autopsy showed Atlanto-occipital dislocation (internal decapitation), brainstem tear, brain bleed, lacerated spleen and liver, and fractured ribs, pelvis, and femur.

**{¶11}** The other three crash victims were transported to the hospital with serious injuries. The car's driver spent two days in the hospital with internal bleeding, fractured ribs, and collapsed lung. The 18-year-old passenger from the car spent five days in the hospital with broken ribs, collapsed lung, lung contusion, and lacerated spleen. The 17-year-old passenger from the car spent five days in the hospital with broken ribs, collapsed lung, and ruptured diaphragm.

**{¶12}** After reciting these facts, the state's sentencing memorandum set forth the law on consecutive sentencing and noted the sentencing range for the court to choose from was 3 to 35 years with a Reagan Tokes maximum of 40.5 years. What is protested on appeal is the next statement opining consecutive sentences were proper and observing:

> The State, pursuant to Rule 11, has agreed to argue for a term of prison
> within the provided statutory range . . . While the State has agreed to refrain
> from requesting a specific amount of time, it does believe that the evidence
> in this case supports the imposition of consecutive sentences.

(3/13/24 Sent. Memo.)

**{¶13}** At the sentencing hearing, after setting forth the charges to which Appellant previously pled guilty, the state did not orally mention consecutive sentences, but pointed to its sentencing memorandum. Defense counsel acknowledged receiving the document the prior day.

**{¶14}** The court then asked, "did you have a chance to discuss this matter with your client?" Counsel replied, "Yes. And she prefers to go forward with sentencing." (Sent.Tr. 3).

**{¶15}** When the court next prompted him "to address the issues on the record that we discussed off the record," defense counsel began by stating, "inducement for that plea was the prosecutor's agreement that the state would recommend a prison sentence without any defined specific term of that prison sentence, leaving it up to the discretion of the Court of course." (Sent Tr. 3-4). The defense suggested the state's sentencing memorandum "theoretically" made it more difficult for Appellant to argue the court should impose a total sentence of three years as the chosen minimum (the mandatory minimum for the first-degree felony) because a consecutive sentence would at least require another two years (the mandatory minimum for Appellant's second-degree felonies). (Sent.Tr. 4-5). Defense counsel also made the following observations about the state's sentencing memorandum:

> In that memorandum the prosecutor, although acknowledging that they were essentially standing silent on the term of the prison sentence, did request that you impose consecutive sentences.

> Now, the only way that you could have done that was to exceed the three-year minimum. Because the felony one carries that three-year minimum, any consecutive sentence would have to be a minimum of two years on top of that.

> So it was my perspective that the state reneged on the agreement reached, which induced the plea in the first place. But essentially they tried to come in the back door where they didn't publish this to the defendant when she entered her plea.

> When I reported my concerns this morning to you, you indicated that you would consent - - or at least consider permitting Ms. Madison to withdraw her guilty plea and schedule a trial.

> And although I discussed that with her, and I went so far as to recommend that remedy to her. She made the decision, Judge, that she prefers to go forward today to essentially put this issue behind her and everyone else involved.

> She specifically told me that she was raised to accept the consequences for your actions.

Case No. 25 MA 0037

And although she knows she's going to the penitentiary - - it's mandatory - - she's prepared psychologically to go to the penitentiary. She doesn't wish to delay this for her - - for her family, for the family of the victims.

So knowing that I recommended that she permit me to withdraw the plea, she has instructed me confidently. And she wants to go forward with sentencing this morning.

(Sent. Tr. 4-6).

{¶16} Appellant answered affirmatively when the court asked her if this was correct and when the court asked if her attorney answered all of her questions regarding this issue. (Sent. Tr. 6). In accordance, the court proceeded with the sentencing hearing as requested. Victim impact statements were presented: the mother of the deceased victim spoke and the driver of the car Appellant hit submitted a statement that his mother read at sentencing, which mentioned the deceased victim's children.

{¶17} Defense counsel spoke of Appellant's four children and said she was pregnant. He believed she had been alcohol-free since the accident. He disclosed advising Appellant an "appropriate" sentence would fall between four and six years in prison. (Sent. Tr. 14). While exercising her allocution right, Appellant apologized and then seemed overcome by emotion, at which point defense counsel read the statement Appellant prepared.

{¶18} The court sentenced Appellant to an indefinite term of 8 to 12 years in prison on the first-degree felony, four years in prison on each of the three second-degree felonies, and 180 days in jail on the first-degree misdemeanors. The court ordered the felony sentences to run consecutively to each other and made consecutive sentencing findings. (Sent. Tr. 18); (3/19/25 J.E.). A timely appeal was filed.

## ASSIGNMENT OF ERROR ONE

{¶19} Appellant sets forth two assignments of error, the first of which contends:

"Defendant failed to receive effective assistance of counsel."

{¶20} A claim of ineffective assistance of counsel requires a showing of both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Consequently, if the performance was not deficient, then there is no need to

review for prejudice and vice versa. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). Moreover, in the direct appeal of the criminal conviction, these items must be demonstrated by the record before the court, as opposed to being based on speculation or proof outside the record. *State v. Hartman*, 93 Ohio St.3d 274, 299 (2001).

**{¶21}** In evaluating an alleged deficiency in performance, the court asks whether there was "a substantial violation of any of defense counsel's essential duties to his client" so that "counsel's representation fell below an objective standard of reasonableness." *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), citing *Strickland* at 687-688. Our review is highly deferential to counsel's decisions as there are "countless ways to provide effective assistance in any given case" and there are strong presumptions that the decisions fell within the wide range of reasonable professional assistance. *Id.* at 142, citing *Strickland* at 689. We refrain from second-guessing the strategic decisions of counsel. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

**{¶22}** On the prejudice prong, an appellant must show there is a reasonable probability the result of the proceedings would have been different but for the serious errors committed by counsel. *Id.* at 557-558. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair due to the performance of trial counsel. *Id.,* citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). Lesser tests of prejudice have been rejected: "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley* at 142, fn. 1, quoting *Strickland* at 693.

**{¶23}** Appellant alleges two instances of ineffective assistance of counsel occurring during the sentencing hearing. Each allegation sets forth a different reason in support of Appellant's argument that defense counsel should have asked the court for a recess of the sentencing hearing.

**{¶24}** First, it is argued defense counsel should have requested a recess at the beginning of the sentencing hearing to discuss with Appellant the preferred reaction to the state's sentencing memorandum. However, this clearly already occurred before the court opened the hearing. The record plainly shows defense counsel discussed the matter with the court and also with Appellant prior to the sentencing hearing.

{¶25} As quoted above in our Statement of the Case, defense counsel placed on the record the content of their conversation. To summarize, during their attorney-client discussions about the state's sentencing memorandum, defense counsel instructed Appellant she should withdraw the plea and proceed to trial based on his belief the state was breaching the plea agreement by recommending consecutive sentences. Nevertheless, Appellant advised her attorney she wanted to maintain her guilty plea and proceed to sentencing that day, regardless of the state's recommendation of consecutive sentences and regardless of whether the recommendation breached the plea agreement.

{¶26} Defense counsel even indicated some of Appellant's reasoning expressed to him prior to the sentencing hearing: she prepared herself for the consequences; she did not want a trial; and she wished to avoid further delay for the benefit of the victims, their families, and her family. Appellant was thus able to consult with her attorney about the available positions or choices and distinctly concluded she did not want to seek to withdraw her plea despite her attorney's unwavering recommendation to do so. In fact, on her refusal to allow him to request plea withdrawal, defense counsel observed, "she has instructed me confidently." (Sent. Tr. 6).

{¶27} In accordance, the record does not demonstrate counsel was deficient by failing to seek an additional opportunity to speak to Appellant about his recommendation after the sentencing hearing commenced, as he just met with her prior to the hearing and she just heard him recite the recommendation again for the record. Alternatively, there is no indication Appellant would have changed her mind if provided an additional meeting with counsel prior to sentencing.

{¶28} Second, it is claimed defense counsel should have requested a recess to allow Appellant to compose herself near the end of the sentencing hearing while counsel was making mitigating remarks on her behalf or during her allocution, which constituted the Crim.R. 32(A) portion of the hearing. After impact statements by the representatives of the victims, the record indicates Appellant and her attorney stood at the podium. Her attorney started generally discussing deaths caused by drunk driving. Soon after he started speaking, Appellant claimed she was going to faint. Her attorney replied, "You're good" while she repeated, "No. I'm going to faint." Defense counsel then said, "You have

to pay attention." Appellant replied, "I'll try." (Sent. Tr. 11). Defense counsel then continued presenting his remarks. (Sent. Tr. 11-15).

{¶29} Before he was finished, Appellant asked to speak. Thereafter, upon completing his statement, counsel inquired whether Appellant wished to read from her written statement or just speak her thoughts. Appellant began paraphrasing her statement. She apologized for the trauma and hurt she caused "to that family and my baby" but soon said, "Oh, man. I'm losing it. I can't - - I can't --." Counsel therefore asked if he could read Appellant's written statement and then did so. (Sent. Tr. 15-16).

{¶30} We note the sentencing hearing was held ten days after the plea hearing, and there are no issues with the plea hearing. Crim.R. 11 negotiations occurred at various pretrials, and Appellant entered her guilty plea on the day a rescheduled jury trial was to begin. Her attorney represented her through various stages of this case for over two years, during which he would have gained some familiarity with her demeanor. Clearly, he did not believe a motion for a recess was warranted at the sentencing hearing. Likewise, the trial court viewed Appellant's demeanor at the prior proceedings and at the sentencing hearing. Her personality, gestures, eye movements, voice inflection, and other physical attributes of emotion or wellness are not ascertainable from the record before this court. The record does not indicate she fainted or needed medical attention. Sentencing can be an emotional experience due to the reliving of memories about the events at issue while waiting for the gavel to fall with the announcement of a declaration of an unknown term in prison. The participants occupied the best position from which to ascertain the propriety of requesting a recess to purportedly calm a criminal defendant's emotions after the victims' representatives spoke and were waiting to hear the defense arguments and the defendant's allocution.

{¶31} The record does not show deficient performance or prejudice in the lack of a motion for a recess during sentencing based on Appellant's voicing of stress. As to the alleged deficiency, a tactical decision may have been made to allow the court to fully view Appellant's display of emotion as suggestive of the sentencing factor involving an evaluation of genuine remorse. *See Carter*, 72 Ohio St.3d at 558 (refrain from second-guessing the strategic decisions of counsel); R.C. 2929.12(D)(5) (lack of genuine remorse as a recidivism factor). Furthermore and alternatively, as to prejudice, it was pointed out

Appellant personally prepared the written statement. She began paraphrasing it but was too emotional to proceed. Her attorney then fully presented her prepared statement to the court. The record does not indicate the results were unreliable or the proceeding was fundamentally unfair due to the performance of trial counsel.

{¶32} In sum, counsel did not render ineffective assistance of counsel by not requesting a recess at sentencing. This assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TWO</u>

{¶33} Appellant's second assignment of error alleges:

"The trial court failed to properly address the breach of the plea agreement by the State of Ohio."

{¶34} As detailed above, defense counsel informed the trial court at sentencing that he believed the state breached the clause in the plea agreement dealing with the state's sentencing recommendation when the state recommended consecutive sentences.[1] On appeal, Appellant recites that if a plea agreement is not fulfilled by the state, then the defendant who detrimentally relied on the breached portion of the agreement is entitled to a remedy of specific performance or rescission in the form plea withdrawal. *See Santobello v. New York*, 404 U.S. 257, 263 (1971). From this, Appellant believes the trial court had an obligation to announce one of these remedies and claims we should remand for the trial court to do so.

{¶35} Initially, the state responds by arguing the recommendation of consecutive sentences without a recommendation on the length of the prison terms did not violate the written plea agreement where the form agreement's blank line after the preprinted "The State agreed to recommend" was filled out to say, "Prison term." (3/4/25 Signed Plea Agreement) (as further detailed and quoted above in our Statement of the Case). The state suggests this was not an agreement to stand totally silent but just an agreement to not give an opinion on the precise prison term for each offense or the total prison term, which the state notes could have exceeded 40 years. In other words, the written plea did not specifically say the state would stand silent by merely saying the state would recommend a prison term (and leaving the blanks for recommended minimum and

---

[1] At the sentencing hearing, the state did not orally request consecutive sentences but pointed to its filing of the sentencing memorandum.

maximum sentences empty). It is pointed out the plain language of the agreement rather than a defendant's claimed subjective intent is the test for breach of an agreement. *See State v. Pedicini*, 2020-Ohio-3611, ¶ 28 (7th Dist.) ("At its core, a plea agreement is contractual in nature and subject to contract-law standards.").

**{¶36}** We note only the written agreement is at issue; there was no oral discussion at the plea hearing about the state agreeing to recommend or refrain from recommending anything. Appellant's brief proceeds as if this was essentially an agreement to stand silent on everything except a lack of community control. However, as disclosed in the written plea agreement, the aggravated vehicular homicide count, for instance, already required the imposition of a mandatory prison term from the range of available prison terms for a first-degree felony (due to Appellant also driving under suspension). *See* R.C. 2903.06(B)(2)(b)(i), citing (E), citing R.C. 2929.14(A)(1)(a).[2]

**{¶37}** In any event, the state's overriding responsive argument points out defense counsel voiced his interpretation of the recommendation clause to the trial court but then pointed out *his client did not wish to withdraw her guilty plea*. The state notes this suggests Appellant had a different interpretation of the recommendation clause than her attorney and a different take on sentencing strategy. Ultimately, Appellant specifically advised her attorney to proceed with sentencing in spite of counsel's perception of a breach and in spite of counsel's desired rescission remedy. This was despite counsel advising her before the sentencing hearing that he believed she should seek to withdraw the plea due to his perspective on the meaning of the recommendation clause and its effect on inducing the agreement to plead guilty.

**{¶38}** The trial court was informed of counsel's advice, Appellant's position against a plea withdrawal, and her demand to proceed with sentencing. Clearly, the court had no obligation to impose a plea withdrawal under such circumstances.

---

[2] The statute defining aggravated vehicular homicide by causing a death as the proximate result of an OVI offense provides: "the court shall impose a mandatory prison term as described in division (E) of this section, if any of the following apply: (i) At the time of the offense, the offender was driving under a suspension or cancellation . . . or did not have a valid driver's license . . . and was not eligible for renewal . . . without examination" and "the court shall impose as the minimum prison term for the offense a mandatory prison term that is one of the minimum terms prescribed for a felony of the first-degree in division (A)(1)(a) of section 2929.14." R.C. 2903.06(A)(1),(B)(1),(B)(2)(b)(i),(E). The statute defining aggravated vehicular assault contains similar mandatory sentencing requirements while citing to second-degree felony options. R.C. 2903.08(D), citing R.C. 2929.14(A)(2)(a).

{**¶39**} Therefore, Appellant would essentially be arguing to this court that the trial court should have imposed a remedy of specific performance.  Notably, even this remedy would not entail the trial court's refusal to impose consecutive sentences as some kind of a punishment for the state's alleged breach; such sanction would not constitute specific performance (of defense counsel's interpretation of the clause).  As Appellant was advised, a trial court is not bound by any recommendation (or even by an agreed sentence).  The sentencing memorandum was only protested to the extent it asked for consecutive sentencing.  Under defense counsel's argument, the agreement called for the state to refrain from seeking a specific term in prison, which he interpreted to include not asking for consecutive sentencing (because the imposition of even one consecutive sentence would be at least calling for three years plus two years).  Specific performance would thus entail a striking of certain portions of the state's sentencing memorandum to ensure specific performance of the recommendation clause of the plea agreement (as interpreted by defense counsel).

{**¶40**} Under the circumstances of this case involving defense counsel's recitation of his recommendation on plea withdrawal but the defendant's refusal to seek plea withdrawal, there is no reversible error in the trial court's failure to specifically strike the sentencing memorandum.  In fact, such remedy was not asked for by the defense.

{**¶41**} The *Santobello* remedies are subject to forfeiture even if the breach of a plea agreement is not expressly waived.  *Puckett v. United States*, 556 U.S. 129, 138 (2009) (noting the technical distinction between waiver and forfeiture), clarifying or limiting *Santobello*, 404 U.S. 257.  In other words, the plain error doctrine applies to appellate arguments alleging breach of a plea agreement.  *Pedicini*, 2020-Ohio-3611, at ¶ 30 (7th Dist.) (and "a defendant whose plea agreement is broken by the state will not always be able to show prejudice . . . because [for instance] the court may conclude he likely would not have obtained those benefits in any event"), citing *Puckett* at 134 (the plain error doctrine applies to a claim that the government breached the plea agreement; the plea is not rendered void by the breach, while noting the defendant did not seek to withdraw her plea).

{**¶42**} Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.  Crim.R. 52(B).  As the Ohio

Supreme Court emphasizes, plain error is a discretionary doctrine the appellate court may choose to employ only with the utmost care in exceptional circumstances when required to avoid a manifest miscarriage of justice. *State v. Noling*, 2002-Ohio-7044, ¶ 62. To establish plain error, the defendant must demonstrate the court committed an obvious error and must show the error affected the outcome of trial. *State v. Graham*, 2020-Ohio-6700, ¶ 93, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶43} Here, the defense essentially forbade the trial court from choosing one of the two remedies available *if* the court had been asked to determine whether there was a breach of a plea agreement (and then if the court had agreed there was a breach). In such scenario, the trial court would not be forced to sua sponte choose the other remedy. There was no obvious error under these particular circumstances. Moreover, prejudice is not apparent.

{¶44} In addition, just as ordinary contract breaches are subject to waiver, Appellant essentially waived the alleged breach of the plea agreement by asking the court to proceed to sentencing after her attorney voiced his opinion on the matter but said Appellant did not wish to move to withdraw her plea in order for the court to address the issue; this situation constituted more than a forfeiture. *Compare Puckett* at 138 (in nevertheless upholding the plea, the United States Supreme Court noted it was not saying the defense "waived—that is, intentionally relinquished or abandoned" the breach but was saying he "forfeited" the argument and thus must satisfy the plain error test). The trial court here was presented with a situation exceeding a forfeiture and actually constituting a waiver. For the various reasons expressed, Appellant's second assignment of error is overruled.

{¶45} In accordance, the trial court's sentencing judgment is affirmed.

Waite, J., concurs.

Dickey, J., concurs.

Case No. 25 MA 0037

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**